(January 20, 1914.)

## ONEIDA COUNTY, Plaintiff, v. D. L. EVANS et al., Defendants.

[138 Pac. 337.]

STATUTORY CONSTRUCTION—APPORTIONMENT OF BONDED INDEBTEDNESS.

   1.   Under chap. 6 of the 1913 Session Laws, creating the county of Power, it was the evident intention of the legislature to require Power county to pay an amount of the total bonded indebtedness of Oneida county as the same existed at the time of the introduc-tion and passage of the act creating Power county, equal to the percentage which the assessed valuation of the property included within Power county represents of the total assessed valuation of all the property of Oneida county for the year 1912; and it was not the intention of the legislature to give Power county any benefit from the concession or bonus made to Oneida county by the pro-visions of chap. 5 of the 1913 Session Laws, creating the county of Franklin, and requiring the. county of Franklin to assume the flat sum of $30,000 of the bonded indebtedness of Oneida county.

   2.   Where two separate acts of the legislature are introduced concurrently and passed concurrently through the two branches of the legislature and are approved on the same day and at substan-tially the same time by the' governor, they should be considered and construed under the same rule of construction applicable to the different parts and various sections of one and the same act.

Original application for writ of review. Writ granted and the action of the board of appraisers appointed to adjust the claims and demands between Power and Oneida counties under the provisions of chap. 6 of the 1913 Session Laws reviewed. Action of the board reviewed and order reversed and the cause remanded to the board with directions.

T. E. Ray and E. G. Davis, for Plaintiff.

"If a new corporation is created out of the territory. of an old corporation, or if part of its territory or inhabitants is annexed to another corporation, unless some provision is made in the act respecting the property and existing liabilities of the old corporation, the latter will be entitled to all the property, and solely liable for all the liabilities." (1 Dillon, Mun. Corp., art. 359; *Mt. Desert v. Tremont,* 72 Me. 348.)

"The remedy to compel the new township to share in the old burdens is to have an apportionment of them under the statute." (*Courtright v. Brooks Township,* 54 Mich. 182, 19 N. W. 945; *Windham v. Portland,* 4 Mass. 384; *North Yarmouth v. Skillings,* 45 Me. 133, 71 Am. Dec. 530; *Hampshire County v. Franklin County,* 16 Mass. 76; *State v. City of Lake City,* 25 Minn. 404; *Laramie County Commrs. v. Albany County Commrs.,* 93 U. S. 307, 23 L. ed. 552.)

Existence of the right of contribution as between two co-obligors does not release either from the full measure of his primary responsibility. (9 Cyc. 798; *Weidemeyer v. Landon,* 66 Mo. App. 520; *Culmer v. Wilson,* 13 Utah, 129, 57 Am. St. 713, 44 Pac. 833; *Norris v. Churchill,* 20 Ind. App. 668, 51 N. E. 104.)

O. R. Baum and W. G. Bissell, for Defendants.

When two legislative acts are approved upon the same day, in case of a controversy as to which becomes a law first, the court may resort to the office of the Secretary of State and to the published statutes for information as to the order of their approval, and the one that is found to have been approved last is the prevailing law. (*Davis v. Whidden,* 117 Cal. 618, 49 Pac. 766.)

Under the circumstances and the evidence presented, there can be no question that the Franklin county bill, chap. 5, was a living act and a published law before the Power county bill, chap. 6, became a law.

C. A. Sunderlin, *pro se.*

AILSHIE, C. J.—This is an original application made in this court for a writ of review to review the action of the appraisers appointed under the provisions of chap. 6 of the 1913 Session Laws creating the county of Power, whereby the appraisers sought to adjust the bonded indebtedness between the counties of Power and the parent county of Oneida. The only question to be determined is the proper construction to place on said sec. 7 of the act. That section provides for the apportionment and adjustment between the two counties of the bonded indebtedness of the old county, and reads as follows:

"The bonded indebtedness of the county of Oneida, state of Idaho, existing and owing at the time this act takes effect, shall be paid by the counties of Oneida and Power in the manner and proportion as follows, to wit: that the county of Power shall pay such proportion of said indebtedness as the total assessed value, as shown by the assessment-rolls of 1912, of that part of Oneida county hereby taken and declared to be a part of Power, bears to the total assessed value of Oneida county as it now exists; and upon the creation of said Power county and the apportionment of the indebtedness aforesaid, upon the basis aforesaid, the said Oneida county shall own and retain the courthouse, furniture, fixtures and appurtenances and the real estate upon which the same is situated."

The same session of the legislature enacted chap. 5 creating the county of Franklin, and the two acts, being chapters 5 and 6 of the 1913 Sess. Laws, were approved by the governor on the same day, and both became laws on the same day. Chap. 5, which created the county of Franklin out of the territory which formerly belonged to Oneida county, provided that the new county of Franklin should assume the sum of

$30,000 of the bonded indebtedness of Oneida county, without reference to the proportion the total assessed valuation of the new county might sustain to the assessed valuation of the old county or the remaining county.

It appears that at the time of the passage of these acts the county of Oneida had a bonded indebtedness of $59,000. When it came to adjusting the bonded indebtedness between Power and Oneida counties the commissioners disagreed as to the basis of apportionment of the remaining bonded indebtedness of $29,000 between these two counties. The Oneida county commissioner contended that Power county should assume a sum of the entire $59,000 indebtedness of the old county equal to the percentage of assessable property of the old county that was taken and included within the boundaries of the new county, which was twenty-seven per cent. On the other hand, the Power county commissioner contended, and the third commissioner appointed by the governor agreed with him, that Power county should only pay 22.8 per cent of the total outstanding bonded indebtedness of $59,000. This made a difference of some $2,430 between the two counties. This difference in computation arises out of the fact that $30,000 assumed by Franklin county was $5,220 more than would have fallen to it to pay had it been computed on the basis of the percentage which the territory cut off and organized into Franklin county bore to the whole territory which comprised the parent county. Power county, therefore, contended that it was entitled to a credit out of this concession of $5,220 equal to the percentage that the assessed valuation of the county of Power would sustain to the assessed valuation of the property left in the old county of Oneida after the segregation of the two new counties. In other words, the contention reduces itself down to this: That whereas Franklin county, in order to gain the consent of the old county to its creation, made the parent county an inducement of $5,220 to apply on its bonded indebtedness over and above the equitable share which would have fallen to that territory, Power county, on the other hand, now contends that this concession made by Franklin county was made

as well *to Power as to Oneida,* and that Power should share in the benefits. Oneida county, however, contends that it was a concession made solely to the parent county, and that no other county created from territory of the parent county is or would be entitled to claim any benefit from this concession.

It seems to us that it is only necessary to turn to the legislative act and consider for a moment the language of the statute, the time and conditions under which the two statutes passed the legislature, and the evident purpose of the respective measures, in order to determine the construction to be placed on the language of sec. 7, above quoted.

The two bills now embodied in chapters 5 and 6 were introduced in the legislature on the same day. The bill creating Power county was introduced in the Senate on the 10th day of January. The bill creating Franklin county was introduced in the House of Representatives on the same date. Each bill took its due course through the legislature, and no one could foresee whether either one would pass, or if it should pass, when it would finally become a law. The Power county bill, which finally passed the legislature on the 27th day of January, was received in the governor's office on the 29th. The Franklin county bill passed the legislature on January 28th and was received in the governor's office on the 29th, and both bills were approved by the governor on the 30th. It is claimed that the Franklin county bill was signed and approved by the governor fifteen minutes prior to his approval of the Power county bill, but we do not consider this a matter of much significance in the determination of this question.

It is clear, and indeed seems apparent, that each bill was drawn and had reference to the creation of the particular county which it proposed to create and organize, and that it was directed against the whole territory of the parent county without reference to any other county either then in existence or that might be subsequently created from the territory of the parent county. It is equally clear that when the Franklin county bill referred to the bonded indebtedness of Oneida county, the parent county, it had reference to the *whole in-*

*debtedness of the parent county;* and it is likewise equally clear that when the Power county bill referred to the bonded indebtedness of Oneida county, the parent county, it had reference to the *entire indebtedness of the parent county.*

The legislature in considering the Power county bill could not foresee, and we would not be justified in assuming that they even contemplated, that the Franklin county bill would pass first and become a law prior to the passage and enactment of the Power county bill. When they provided by sec. 7 of the Power county act that, "The bonded indebtedness of the county of Oneida . . . . shall be paid by the counties of Oneida and Power in the manner and proportion as follows, to wit: That the county of Power shall pay such proportion of said indebtedness as the total assessed value, as shown by the assessment-rolls of 1912, of that part of Oneida county hereby taken and declared to be a part of Power, bears to the total assessed value of Oneida county as it now exists," they evidently meant the total indebtedness of Oneida county as it existed immediately prior to the segregation of Power county and at the time of the introduction and passage of the bill, and they likewise meant that the percentage should be struck upon the basis of the mathematical ratio between the entire assessed valuation of the whole county as it originally stood and the new county of Power as it was proposed to be created by this act.

We cannot believe, nor can we find anything in the act which would justify the inference, that the legislature intended to charge the parent county with any part or percentage of the concession or bonus which the county of Franklin offered and assumed by the Franklin county act as a consideration for their release from the parent county and organization into a new county.

In our judgment, these bills should be construed as concurrent acts. It is our opinion that what was said by the writer of this opinion in the case of *Blomquist v. Board of Commissioners of Bannock County, ante,* p. 284, 137 Pac. 174, is applicable here, namely: That where two acts were passed and approved on the same day, they should be considered and

construed as a single act under the same rule of construction as if all parts of both acts were embodied in one act. To apply that rule of construction would certainly .amount to approving the construction contended for by the appraiser who represented Oneida county and the contention made by that county.

We conclude that the appraisers erred in their construction of the law and that they should have charged Power county with the same percentage. of the bonded indebtedness of $59,000 of the old county, that the assessable property within the boundaries of the new county of Power sustained to the assessable property of the parent county of Oneida for the year 1912. The action of the appraisers is, therefore, vacated and set aside and the appraisers are directed to enter an order in accordance with the views herein expressed. No costs awarded.

Sullivan, J., concurs.