(No. 6031. November 3, 1933.)

GARRETT TRANSFER & STORAGE COMPANY, a Corporation, Appellant, v. EMMITT PFOST, Commissioner of Law Enforcement, State of Idaho, Respondent.

[33 Pac. (2d) 743.]

F. E. Tydeman, for Appellant.

Bert H. Miller, Attorney General, and Ariel L. Crowley, Assistant Attorney General, for Respondent.

GIVENS, J.—Appellant engaged in the general auto transportation business, both interstate and intrastate, questions the constitutionality of subsection h, section 2, chapter 185, 1931 Session Laws, page 309 (now subsec. h, sec. 48–127, I. C. A.), and section 8, chapter 267, 1929 Session Laws, page 619 (now sec. 59–811, I. C. A.) and seeks to enjoin the enforcement of said statutes.

Respondent challenges equitable interference with the enforcement of a criminal statute. The complaint alleges the plaintiff has no plain, speedy or adequate remedy at law, that prosecutions would be brought for every operation of a trailer by the plaintiff; that there is no provision whereby the plaintiff could pay the tax under protest and recover back the same; that the public utilities commission will cancel the permits for such operation now held by plaintiff; and that in the event of payment (of the tax) appellant could only be reimbursed by act of the legislature. Under such circumstances the courts have recognized as an exception the propriety of equitable intervention.

"That a suit in equity does not lie where there is a plain, adequate and complete remedy at law is so well understood as not to require the citation of authorities. But the legal remedy must be as complete, practical and efficient as that

which equity could afford. (*Boise Artesian Water Co. v. Boise City*, 213 U. S. 276, 281, 29 Sup. Ct. 426, 53 L. ed. 796; *Walla Walla v. Walla Walla Water Co.*, 172 U. S. 1, 11, 12, 19 Sup. Ct. 77, 43 L. ed. 341.) Equity jurisdiction will be exercised to enjoin the threatened enforcement of a state law which contravenes the federal Constitution wherever it is essential in order effectually to protect property rights and the rights of persons against injuries otherwise irremediable; and in such a case a person, who is an officer of the state, is clothed with the duty of enforcing its laws and who threatens and is about to commence proceedings, either civil or criminal, to enforce such a law against parties affected, may be enjoined from such action by a federal court of equity. *Cavanaugh v. Looney*, 248 U. S. 453, 456, 39 Sup. Ct. 142, 63 L. ed. 354; . . . . '' (*Terrace v. Thompson*, 263 U. S. 197, 44 Sup. Ct. 15, 68 L. ed. 255.)

The late case, *Quaker Baking Co. v. Herring*, 3 Fed. Supp. 118, holds:

''While it is a general rule that a court of equity will not interfere to prevent the enforcement of criminal statutes, even though unconstitutional, an exception exists when the prevention of the threatened prosecution is essential to the safeguarding of rights of property and when the circumstances are exceptional and the danger of irreparable loss is both great and immediate. (Citing cases.)

''It is, however, settled that where one is deprived of his right to sell or lease or otherwise use his property, under an act which imposes as a penalty for its violation punishment by fine or imprisonment, one is not obliged to take the risk of prosecution, fine, and imprisonment in order to secure an adjudication of his rights. He may obtain relief by injunction if the law complained of is shown to be void. . . . . '' (*Fox Film Corporation v. Trumbull*, 7 Fed. (2d) 715. See *Terrace v. Thompson, supra; Packard v. Banton*, 264 U. S. 140, 44 Sup. Ct. 257, 68 L. ed. 596; *Beatrice Creamery Co. v. Cline*, 9 Fed. (2d) 176; *Hygrade Provision Co. v. Sherman*, 266 U. S. 497, 45 Sup. Ct. 141, 69 L. ed. 402.)

The appellant here might be subjected to a multiplicity of suits; and if it paid the fees in question and later the law were held unconstitutional, it might, though we express no opinion thereon, be unable to recover the said fees.

"The term 'auto stage' shall mean a motor vehicle used in the business of transporting persons and/or property over any public highway in this state . . . ." (Subsection y, section 1, 1931 Session Laws, page 307, chapter 185 (now subsection y, section 48–101, I. C. A.).

Appellant contends that the definition in section 48–101, I. C. A., of "auto stage" does not include "auto transportation company" as defined in subsection e, section 1, chapter 267, 1929 Session Laws, page 615 (now subsection e, section 59–801, I. C. A.), and that plaintiff does not operate as an auto stage and therefore should not be obliged to pay this tax. Appellant is engaged in the business designated and section 48–101, I. C. A., defines "trailer" and fixes the fees thereon.

As to uniformity sections 2 and 5, article 7, of our state Constitution refer to taxation in its ordinary sense and not to license or registration fees on motor vehicles. (*In re Kessler*, 26 Ida. 764, 146 Pac. 113, Ann. Cas. 1917A, 228, L. R. A. 1915D, 322; *Curtis v. Pfost*, 53 Ida. 1, 21 Pac. (2d) 73; *Diefendorf v. Gallett*, 51 Ida. 619, 10 Pac. (2d) 307.)

In *Interstate Transit Co. v. Lindsey*, 283 U. S. 183, 51 Sup. Ct. 380, 75 L. ed. 953, relied on by appellant, the revenue was allocated to the general fund. In the instant case the revenue goes to the state highway fund, via the motor vehicle fund as provided by chapter 165, 1929 Session Laws, page 298 (now sections 48–801 and 48–802, I. C. A.).

There is no allegation that one or any number of said trailers are operated *solely* in interstate commerce and appellant admits that a different rule applies to interstate operators as distinguished from intrastate.

As against the objection that the act embraces more than one subject in violation of section 16, article 3, of

the state Constitution, the title is identical with that approved in *State v. Jones,* 9 Ida. 693, 75 Pac. 819.

 Appellant argues that section 48–127, I. C. A., is not in effect, because, though approved on the same day it carried no emergency clause, chapter 189, 1931 Session Laws, page 325 (3 I. C. A., p. 227) did and thus is controlling. Where two acts are passed and approved on the same day, they should be construed as a single act. (*Oneida County v. Evans,* 25 Ida. 456, 138 Pac. 337.) Section 48–127 went into effect later than chapter 189, *supra,* and is technically the latest expression of the legislative will. The appellant relies on *Peavy v. McCombs,* 26 Ida. 143, 140 Pac. 965, contending the acts are inconsistent, but there is no inconsistency merely because section 48–127 contains subsection h, while chapter 189, *supra,* does not.

 Appellant claims that the classification under subsection h, section 48–127, I. C. A., is arbitrary; that it violates section 13, article 1, of the state Constitution, and that the exemptions thereunder render the law discriminatory and void. . That the law violates the Fourteenth Amendment of the federal Constitution, equal protection clause, in that by taxing only trailers used in connection with autostages, it exempts all other trailers used by individuals or common carriers.

*In re Public Utilities Com.,* 51 Ida. 56, 1 Pac. (2d) 627, referring to section 13, article 1, the court said:

"This clause only requires that the same means and methods be applied impartially to all the constituents of a class so that the law may operate equally and uniformly upon all persons in similar circumstances." (*Curtis v. Pfost, supra.*)

It does not violate the equality clause of the federal Constitution.

"The equality clause of the federal Constitution is not necessarily infringed by special legislation or by legislative classification of persons or things." (*State v. Horn,* 27 Ida. 782, 152 Pac. 275.)

"If the state determines that the use of streets for private purposes in the usual and ordinary manner shall be preferred over their use by common carriers for hire, there is nothing in the Fourteenth Amendment to prevent. . . . . Their use for the purpose of gain is special and extraordinary, and, generally at least, may be prohibited or conditioned as the Legislature deems proper." (*Packard v. Banton, supra.* See: *Sprout v. City of South Bend,* 277 U. S. 163, 48 Sup. Ct. 502, 72 L. ed. 833, 62 A. L. R. 45; *Smallwood v. Jeter,* 42 Ida. 169, 244 Pac. 149.)

The appellant claims: That the law was not read on three separate days in each house prior to final vote; that no emergency existed warranting dispensing with such provision; it contained no emergency clause; was not read section by section, and no vote was taken by yeas and nays thereon. That the law provides for double taxation and is a tax on interstate commerce.

*In re Drainage Dist. No. 1,* 26 Ida. 311, 143 Pac. 299, L. R. A. 1915A, 1210, announces the rule, that it will not be presumed in any case from the mere silence of the journals that either house has exceeded its authority or disregarded a constitutional requirement in the passage of a legislative act, unless the Constitution has expressly required the journal to show the actions taken, as, for instance, where it requires the yeas and nays to be entered. (Citing 36 Cyc., p. 950.)

There is no double taxation. (*In re Kessler, supra; Smallwood v. Jeter, supra.*)

The trailer act is not a burden on interstate commerce because it is imposed on all commercial vehicles, similarly situated, using the highways.

" . . . . where a state at its own expense furnishes special facilities for the use of those engaged in commerce, interstate as well as domestic, it may exact compensation therefor. The amount of the charges and the method of collection are primarily for determination by the state itself." (*Hendrick v. Maryland,* 235 U. S. 610, 35 Sup. Ct. 140, 59 L. ed. 385.)

Appellant complains that the proceeds of the tax are not devoted wholly to the supervision of autostages or to the maintenance of the highways.

Herein the proceeds are allocated to the motor vehicle fund and provision made for transfer to the state highway fund.

This court has held, *Smallwood v. Jeter, supra,* a license fee not invalid merely ·because it was above the cost of regulation; it is sufficient if the proceeds go into the highway fund. (*Interstate Transit Co. v. Lindsey, supra; Clark v. Poor,* 274 U. S. 554, 47 Sup. Ct. 702, 71 L. ed. 1199.)

Appellant alleges impairment of ·the obligation of contract, arguing that it operates its trailers under chapter 267, Session Laws of 1929, page 614 (secs. 59–801 to 59–817, I. C. A.) under which law its permit to operate was granted, and that this constitutes a contract between plaintiff and the state of Idaho.

This contention would exclude the state from initiating new methods of taxation in almost every field if carried to its ultimate conclusion; the question is urged here for the first time and hence under *Curtis v. Pfost, supra,* will not be considered.

Contrary to appellant's argument that the one per cent gross earnings tax is unfair and discriminatory, exemptions as to those operating exclusively in transportation of farm products, complained of by appellant, have been approved in *Curtis v. Pfost, supra.*

Appellant claims the tax is void for the reason that the tax is not directly proportionate to the use made by appellant of the highways.

If the appellant means that the tax is in excess of the value of the use of the highways as a place to transact his business, he has pleaded no facts as to the amount or value of such use, and also the allegation is a conclusion of law not admitted by the demurrer. (*Smallwood v. Jeter, supra.*)

"While a state may not lay a tax on the privilege of engaging in interstate commerce, .... it may impose even upon motor vehicles engaged exclusively in interstate com-

merce a charge, as compensation for use of the public highways, which is a fair contribution to the cost of maintaining and constructing them, and of regulating the traffic thereon. . . . . As such a charge is a direct burden on interstate commerce, the tax cannot be sustained unless it appears affirmatively, in some way, that it is levied only as compensation for use of the highways or to defray the expense of regulating motor traffic. This may be indicated by the nature of the imposition, such as a mileage tax directly proportioned to the use, . . . . or by express allocation of the proceeds of the tax to highway purposes, as in *Clark v. Poor, supra,* . . . . Where it is shown that the tax is so imposed, it will be sustained unless the taxpayer shows that it bears no reasonable relation to the privilege of using the highways, or is discriminatory. (Citing cases.)" (*Interstate Transit Co. v. Lindsey, supra.*)

Section 14 of chap. 267, 1929 Session Laws, page 621 (now sec. 59–815, I. C. A.), expressly provides:

"Neither this act nor any provision thereof shall apply or be construed to apply to commerce with foreign nations or commerce among the several States of this Union, except insofar as may be permitted under the provisions of the Constitution of the United States and the acts of Congress."

■■■ It cannot be assumed in advance that a construction will be given a state statute by the officials, or such an application made thereof, as to render it obnoxious to the federal Constitution. (*Utah Power & Light Co. v. Pfost,* 286 U. S. 165, 52 Sup. Ct. 548, 76 L. ed. 1038; Id., 52 Fed. (2d) 226.)

Judgment affirmed; costs to respondent.

Budge, C. J., and Morgan, Holden and Wernette, JJ., concur.

ON REHEARING.

(June 19, 1934.)

GIVENS, J.—A rehearing was granted on the following four points:

First, the meaning of this sentence of the amended complaint:

"That a considerable portion of the operation of said trailers is that they are used exclusively in interstate commerce, to-wit: the hauling of freight between Salt Lake City, Utah, and points in Idaho and return."

Second, the constitutionality of acts of the kind herein under consideration, where the use of the vehicle is exclusively interstate, or intrastate or mixed.

Third, whether under *Interstate Transit Co. v. Lindsey,* 283 U. S. 183, 51 Sup. Ct. 380, 75 L. ed. 953, the fees required under subsection h, section 48–127, I. C. A., and section 59–811, I. C. A., are unconstitutional?

Fourth, whether under *Smith v. Cahoon,* 283 U. S. 553, 51 Sup. Ct. 582, 75 L. ed. 1264, the exemptions in subsection aa, of section 48–101, I. C. A., and subsection e, of section 59–801, I. C. A., are unconstitutional or whether the reasoning in *Prouty v. Coyne,* 55 Fed. (2d) 289, 295, distinguishes the application of *Smith v. Cahoon, supra?*

As pointed out in the original opinion the portion of the amended complaint referred to is not clear, however, conceding without determining that the pleader meant to charge that certain individual trailers were used exclusively in interstate commerce, appellant contends they could not be taxed under the statute in question, and that the original opinion did not correctly interpret *Interstate Transit Co. v. Lindsey, supra,* which case appellant argues rejected a classification based upon carrying capacity, however, the latest interpretation of that case, by the supreme court of

the United States in *Hicklin v. Coney,* 290 U. S. 169, 54 Sup. Ct. 142, 78 L. ed. 247, expressly sustains and supports our analysis and holding in the original opinion as follows:

"Carrying capacity, the size and weight of trucks, unquestionably have a direct relation to the wear and hazards of the highways. It is for this reason that the authority of the State to impose directly reasonable limitations on the weight and size of vehicles, although applicable to interstate carriers, has been sustained." (Citing cases.)

The original opinion is in this particular and as to the first, and third questions, therefore adhered to.

As to the fourth question the holding in *Prouty v. Coyne, supra,* sustains the statute as against appellant's attack of unconstitutionality on the exemptions allowed.

 The additional point concerning the tax on "gross revenues" imposed by section 59-811, I. C. A., requires further elucidation. The authorities generally though not without conflict[1] are to the effect that such a tax is an interference with interstate commerce and therefore not permissible to the extent that such "gross revenues" are derived from business outside of the taxing state. (*Fargo v. Stevens,* 121 U. S. 230, 7 Sup. Ct. 857, 30 L. ed. 888; *Philadelphia & S. Mail Steamship Co. v. Com. of Pennsylvania,* 122 U. S. 326, 7 Sup. Ct. 1118, 30 L. ed. 1200; *Prouty v. Coyne, supra; Alpha Portland Cement Co. v. Com. of Massachusetts,* 268 U. S. 203, 45 Sup. Ct. 477, 69 L. ed. 916, 44 A. L. R. 1219; *Ratterman v. Western Union Tel. Co.,* 127 U. S. 411, 8 Sup. Ct. 1127, 32 L. ed. 229; *Postal Tel. Cable Co. v. Adams,* 155 U. S. 688, 15 Sup. Ct. 268, 360, 39 L. ed. 311; *Ohio Tax Cases,* 232 U. S. 576, 34 Sup. Ct. 372, 58 L. ed. 737.)

---

[1] *Philadelphia & Reading R. R. Co. v. Pennsylvania,* 15 Wall. (82 U. S.) 284, 21 L. ed. 164; *Railway Express Agency v. Holm,* 180 Minn. 268, 230 N. W. 815; *Galveston, H. & S. A. R. Co. v. Texas,* 210 U. S. 217, 28 Sup. Ct. 638, 52 L. ed. 1031; *New Jersey Bell Tel. Co. v. State Board of T. and A.,* 280 U. S. 338, 50 Sup. Ct. 111, 74 L. ed. 463; *Cudahy Packing Co. v. Hinkle,* 278 U. S. 460, 49 Sup. Ct. 204, 73 L. ed. 454.

While the complaint charges in general language that respondent is seeking to collect this "gross revenue" tax without distinction or reference as to the place earned, section 14 of chap. 267, 1929 Session Laws of Idaho, now section 59–815, I. C. A., provides as follows:

"Neither this chapter nor any provision thereof shall apply or be construed to apply to commerce with foreign nations or commerce among the several states of this Union, except in so far as may be permitted under the provisions of the constitution of the United States and the acts of Congress."

It therefore appears that it was the intention of the legislature not to impose the tax on any part of the "gross revenues" for the operation of auto transportation companies outside the state of Idaho and nothing appears in the record to indicate that a segregation of such "gross operating revenue" between that earned for use on the roads within and without the state is impossible, impracticable, or not feasible. While the respondent should be restrained from collecting the tax on the portion of the "gross operating revenue" earned from use of the roads without the state of Idaho, such tax may be collected on the portion earned from the use of the roads within the state. (26 R. C. L. 128, n. 5; 12 C. J. 113, n. 53; *Cudahy Packing Co. v. Minnesota,* 246 U. S. 450, 38 Sup. Ct. 373, 62 L. ed. 827; *Wisconsin & M. R. Co. v. Powers,* 191 U. S. 379, 24 Sup. Ct. 107, 48 L. ed. 229; *Maine v. Grand Trunk R. Co.,* 142 U. S. 217, 12 Sup. Ct. 121, 35 L. ed. 994; *Roadway Express v. Murray,* 60 Fed. (2d) 293; *Schwab v. Richardson,* 263 U. S. 88, 44 Sup. Ct. 60, 68 L. ed. 183; *Hump Hairpin Mfg. Co. v. Emmerson,* 258 U. S. 291, 42 Sup. Ct. 305, 66 L. ed. 622.)

The cited cases do not all agree nor base their conclusions on the same reason or ground, nor can they perhaps be reconciled, but these three incidents of taxability, in the manner here sustained, find support, that the gross revenue being collected only every three months may be considered to have become a part of the mass of property of the taxpayer, within the state, that it is a tax for the use of a

special instrumentality, furnished by the state, or that it be a tax on the functioning of the taxpayer within the state, not as a prerequisite or right to engage within or through the state in interstate commerce but, as stated by Justice Brandeis in *Underwood Typewriter Co. v. Chamberlain,* 254 U. S. 113, 41 Sup. Ct. 45, 65 L. ed. 165, 169:

''It is contended that the tax burdens interstate commerce, and hence is void under § 8 of article 1 of the Federal Constitution. Payment of the tax is not made a condition precedent to the right of the corporation to carry on business, including interstate business. Its enforcement is left to the ordinary means of collecting taxes. (*St. Louis Southwestern R. Co. v. Arkansas,* 235 U. S. 350, 364, 35 Sup. Ct. 99, 59 L. ed. 265, 272; *Atlantic & P. Tel. Co. v. Philadelphia,* 190 U. S. 160, 163, 23 Sup. Ct. 817, 47 L. ed. 995, 999.) The statute is, therefore, not open to the objection that it compels the company to pay for the privilege of engaging in interstate commerce. A tax is not obnoxious to the commerce clause merely because imposed upon property used in interstate commerce, even if it takes the form of a tax for the privilege of exercising its franchise within the state. (*Postal Tel. Cable Co. v. Adams,* 155 U. S. 688, 695, 15 Sup. Ct. 268, 360, 39 L. ed. 311, 315; 5 Inters. Com. Rep. 1.) This tax is based upon the net profits earned within the state. That a tax measured by net profits is valid, although these profits may have been derived in part, or indeed mainly from interstate commerce, is settled. (*United States Glue Co. v. Oak Creek,* 247 U. S. 321, 38 Sup. Ct. 499, 62 L. ed. 1135, Ann. Cas. 1918E, 748; *Shaffer v. Carter,* 252 U. S. 37, 57, 40 Sup. Ct. 221, 64 L. ed. 445, 458; compare *William E. Peck & Co. v. Lowe,* 247 U. S. 165, 38 Sup. Ct. 432, 62 L. ed. 1049.) Whether it be deemed a property tax or a franchise tax, it is not obnoxious to the commerce clause.''

Though the statute does not in terms provide for such segregation, it is the duty of the court to, if possible, construe the law in such a way that it may be harmonized with the Constitution. (*Grice v. Clearwater Timber Co.,* 20 Ida. 70, 117 Pac. 112; *Continental Life Ins. & Inv. Co. v. Hattabaugh,*

21 Ida. 285, 121 Pac. 81; *State v. Morris*, 28 Ida. 599, 155 Pac. 296, L. R. A. 1916D, 573; *Burt v. Farmers' Co-operative Irr. Co., Ltd.*, 30 Ida. 752, 168 Pac. 1078; *In re Edwards*, 45 Ida. 676, 266 Pac. 665; *Williams v. Baldridge*, 48 Ida. 618, 284 Pac. 203.)

Thus modified the judgment is affirmed.

No costs allowed on the rehearing.

Budge, C. J., and Morgan, Holden and Wernette, JJ., concur.

Second petition for rehearing denied.