(No. 6480. June 2, 1937.)

W. L. ROBINSON, G. W. SUPPIGER and FRANK LANG-
LEY, Constituting and Acting as the Industrial Acci-
dent Board of the State of Idaho, Plaintiffs, v. MYRTLE
P. ENKING, State Treasurer, and HARRY C. PAR-
SONS, State Auditor, Defendants.

[69 Pac. (2d) 603.]

Vestal Coffin, for Plaintiffs.

J. W. Taylor, Attorney General, E. G. Elliott and Ariel L. Crowley, Assistants Attorney General, for Defendants.

AILSHIE, J.—This is an application for a writ of mandate to the state auditor and state treasurer, commanding them to transfer on the books of their respective offices the sum of $40,000 to the "Employment Service Fund" under the provisions of chapter 231 of the 1937 Session Laws (1937 Sess. Laws, p. 413). An alternative writ issued and the defendants have answered, admitting their refusal to make the transfer and entries, and base their refusal on the contention that the act in question fails to make any legal or valid appropriation of any sum to or for the benefit of the employment service fund.

The defense here appears to rest on three propositions:

1. That the title to the act does not accurately express the subject matter of the act as required by section 16, article 3 of the constitution, and that therefore the act is void.

2. That the act contains no definite or certain words appropriating any sum whatever from the general funds of the state to the state employment service fund.

3. That the writ of mandate will not issue unless plaintiffs show a *clear* right thereto as distinguished from a doubtful or questionable right.

We enter upon the consideration of this case confronted at once with the contention that the act is invalid and void. This is true because the act does not purport to be anything but an appropriation act and if it fails to accomplish that purpose it is void in so far as the issue here presented is

concerned. In thus considering the question, we are admonished by a well-established rule running throughout a long line of decisions from this court, to the effect that every reasonable presumption must be indulged in favor of the validity of a statute. (*Noble v. Bragaw,* 12 Ida. 265, 85 Pac. 903; *Gillesby v. Board of Commrs. of Canyon County,* 17 Ida. 586, 107 Pac. 71; *Williams v. Baldridge,* 48 Ida. 618, 629, 284 Pac. 203; *State v. Johnson,* 50 Ida. 363, 369, 296 Pac. 588.)

It is also a rule of this court that, where a statute is capable of different constructions, it will be given the construction which will avoid conflict with the constitution and if possible give to it the effect intended. (*Grice v. Clearwater Timber Co.,* 20 Ida. 70, 117 Pac. 112; *Continental Life Ins. etc. Co. v. Hattabaugh,* 21 Ida. 285, 121 Pac. 81; *In re Gale,* 14 Ida. 761, 95 Pac. 679; see *Oregon Short Line R. Co. v. Pfost,* 53 Ida. 559, 27 Pac. (2d) 877; *Garrett Transfer & Storage Co. v. Pfost,* 54 Ida. 576, at 590, 33 Pac. (2d) 743.)

The title to the act (chapter 231) here in question is as follows:

"MAKING AN APPROPRIATION FOR THE PAYMENT OF SALARIES, WAGES AND OTHER EXPENSES OUT OF THE GENERAL FUND FOR THE LAND DEPARTMENT: ADMINISTRATION, BLISTER RUST, TIMBER FIRE PROTECTION, SPECIAL CRUISING, AND OUT OF THE STATE EMPLOYMENT SERVICE FUND FOR THE STATE EMPLOYMENT SERVICE, FOR THE PERIOD COMMENCING ON THE FIRST DAY OF JANUARY, 1937, AND ENDING ON THE THIRTY–FIRST DAY OF DECEMBER, 1938, and DECLARING AN EMERGENCY."

When we examine the body of the act itself we find that all it purports to do is to make appropriations for different bureaus of the land department and for the Industrial Accident Board, which is amply covered by the opening statement in the title that it is "making an appropriation," etc., which is not controverted by defendants. They do contend, however, that when the title and the act are read together such a state of confusion and uncertainty arises that

no one can truly assert that an appropriation has been made for the use of the "State Employment Service Fund" to be expended by the Industrial Accident Board; and that the only reasonable conclusion that can be reached is that no such appropriation has been made. We must, therefore, examine and consider together both the title and the act to see if we can ascertain what was intended, and if we succeed in that quest, then determine whether appropriate or adequate language has been employed to accomplish such intent.

To begin with, we find the title to the act saying:

"MAKING AN APPROPRIATION . . . . OUT OF THE STATE EMPLOYMENT SERVICE FUND FOR THE STATE EMPLOYMENT SERVICE, FOR THE PERIOD COMMENCING ON THE FIRST DAY OF JANUARY, 1937, AND ENDING ON THE THIRTY–FIRST DAY OF DECEMBER, 1938."

From this title it appears that the legislature intended to make an appropriation "for the state employment service" and that such appropriation was intended to be made "out of the state employment service fund." The important and substantive thing they proposed to do was to make an appropriation for the use of the state employment service. The particular fund or account, as carried on the books of the auditor and treasurer, was of minor consequence, for the reason that *it was state money* they were appropriating, no matter what its designation on the books. The act then proceeds with section 1, reading as follows:

"That, in addition to the other sums which have been heretofore appropriated under the provisions of House Bill No. 21 of this session, there is hereby appropriated out of any moneys in the General Fund and the State Employment Service Fund, not otherwise appropriated, the following sums of money, or so much thereof as may be necessary, for the purpose of paying the salaries, wages and other expenses of the departments and bureaus herein set forth for the period commencing on the 1st day of January, 1937, and ending on the 31st day of December, 1938."

Then follow appropriations to the Land Department, the headings to which read:

"LAND DEPARTMENT
Administration
(General Fund)

LAND DEPARTMENT
Blister Rust
(General Fund)

LAND DEPARTMENT
Timber Fire Protection
(General Fund)

LAND DEPARTMENT
Special Cruising
(General Fund)"

Each of the appropriations to the Land Department is evidently intended to be made from the "general fund" though no positive declaration to that effect is made other than as above set forth. No question or controversy is raised as to the validity of the several appropriations to the Land Department. Now when they came to make the appropriation to the state employment service they wrote into the act the following:

"INDUSTRIAL ACCIDENT BOARD
State Employment Service
(State Employment Service Fund)

For salaries, wages and all other expenses the sum of $40,000.00, to be used and transferred by the State Treasurer to the 'State Employment Service Fund' in accordance with and pursuant to the provisions of Chapter 22 of the Laws of 1935, at the extraordinary session of Legislature."

If we follow the same line of reasoning in considering this appropriation to the Industrial Accident Board for state employment service, as appears to be accepted in reference to the land department appropriations, we must conclude that the legislature thought, when writing the headlines, "*State Employment Service* (State Employment Service Fund)," that they were making the appropriation from the state employment service fund; but in the very first sentence follow-

ing they recognized the necessity of first having the money in *that fund* if they were going to make an appropriation *out* of that fund, so they said:

"For . . . . all other expenses the sum of $40,000.00, to be used and transferred by the State Treasurer to the 'State Employment Service Fund' in accordance with . . . . Chapter 22 of the Laws of 1935 . . . . extraordinary session."

While the construction of the foregoing sentence is somewhat involved, and the words used are not those usually employed in appropriation bills, it is nevertheless apparent, from the language employed in this paragraph as well as from the whole act, that the legislature intended to make an appropriation of $40,000 state money to the Industrial Accident Board to be used in administering the "State Employment Service." The legislature has plenary power to make appropriations, except as limited by the constitution, and in the present case our only duty is to determine whether they have made it sufficiently clear, by the act before us, that an appropriation was intended. We think it of no particular moment, for our present purposes, whether they made it from a fund set aside by the appropriation act itself or directly from the general fund in the treasury or from any other fund. Reference to the titles of other appropriation acts discloses that they have usually simply entitled such acts, appropriation acts, as was done by House Bill No. 21 (1937 Sess. Laws, chap. 6, p. 11) referred to in the act before us. That act made sundry appropriations: some from special funds and some from the general fund, and yet the title reads:

"MAKING AN APPROPRIATION FOR THE PAYMENT OF SALARIES, WAGES, AND EXPENSES OF DEPARTMENTS AND INSTITUTIONS, AND DECLARING AN EMERGENCY."

Further elucidating this position, we find by reference to chapter 22 of the 1935 Extraordinary Session Laws mentioned in this act, that the legislature had previously "accepted the provisions of the Act of Congress approved June 6, 1933, entitled, 'An Act to provide for the establishment of a national employment system, and for cooperation with the

States in the promotion of such system, and for other purposes;' (1935 Sess. Laws, First Extra. Sess., p. 91) and by the same act had created the 'State Employment Service Fund.' " That act required the employment service to be administered by the Department of Finance. By a later act (Third Extra. Sess. 1935, sec. 20, chap. 12, p. 46) this service was transferred to the Industrial Accident Board.

The act here under consideration recites that the appropriation is being made for use "pursuant to the provisions of chapter 22 of the Laws of 1935, at the Extraordinary Session of legislature." As we have heretofore observed, chapter 22 of the First Extraordinary Session, 1935, together with the act amendatory thereto, were adopted for the purpose of securing to the state the benefits of the Federal Employment Service Act of June 6, 1933, sometimes referred to as the Wagoner-Peyser Act, together with amendments thereto (Act May 10, 1935, Title 29, sec. 49d, U. S. C. A.). This act of Congress rendered it imperative that the state, in order to obtain the benefits of the act, accept the provisions thereof by legislative act and make appropriation to match the congressional appropriation. Now since the legislature had already accepted the provisions of the federal act and provided an agency for its administration, there remained only one thing further to be done, from time to time, and that was to make adequate appropriations. That is what the legislature was manifestly trying to do in the passage of chapter 231 of the 1937 Session Laws.

Lastly, we are not unmindful of the contention made by the attorney general, that the right to such a writ must be clear and beyond question. The correct and true rule in such matters seems to be this: If the doubt or uncertainty exists or inheres in the facts of the case, so that it does not appear clear that such facts entitle the plaintiff to relief by mandate, under any valid law, the writ will not issue. (*Brooks v. Edgington,* 40 Ida. 432, 233 Pac. 514; *Aker v. Aker,* 51 Ida. 555, 559, 8 Pac. (2d) 777; *Reynard v. City of Caldwell,* 53 Ida. 62, 80, 21 Pac. (2d) 527, 90 A. L. R. 1124; *United States ex rel. Carrick v. Lamar,* 116 U. S. 423, 6 Sup. Ct. 424, 29 L. ed. 677.) But where the only doubt

that clouds the issue consists in the construction of the statute which confers the right or imposes the duty, the writ will issue if the court, after considering the law, concludes that it confers the right claimed or imposes the duty asserted; otherwise it will be denied as of course. (*Thomas v. Armstrong*, 7 Cal. 286; *Larkin v. Harris*, 36 Iowa, 93, at 97; *State v. Town Council of South Kingstown*, 18 R. I. 258, 27 Atl. 599, 22 L. R. A. 65; *Kootenai County v. State Bd. of Equalization*, 31 Ida. 155, at 159, 169 Pac. 935; *United States ex rel. Carrick v. Lamar, supra*, 38 C. J., par. 57, p. 586; 5 Bancroft, Code Prac. & Rem., sec. 3787.)

We conclude that the act made the appropriation intended and that it is the duty of the defendants to make the proper entries and transfers on their books and, to that end, a peremptory writ will issue.

Holden, Budge and Givens, JJ., concur.

MORGAN, C. J., Dissenting.—It is necessary to copy the title to, and section 1 of chapter 231, 1937 Session Laws, in order that the reader may have a clear understanding of the questions before us.

"AN ACT

"MAKING AN APPROPRIATION FOR THE PAYMENT OF SALARIES, WAGES AND OTHER EXPENSES OUT OF THE GENERAL FUND FOR THE LAND DEPARTMENT: ADMINISTRATION, B L I S T E R RUST, TIMBER FIRE PROTECTION, SPECIAL CRUISING, AND OUT OF THE STATE EMPLOYMENT SERVICE FUND FOR THE STATE EMPLOYMENT SERVICE, FOR THE PERIOD COMMENCING ON THE FIRST DAY OF JANUARY, 1937, AND ENDING ON THE THIRTY–FIRST DAY OF DECEMBER, 1938, AND DECLARING AN EMERGENCY.

"*Be It Enacted by the Legislature of the State of Idaho:*

"Section 1. That, in addition to the other sums which have been heretofore appropriated under the provisions of

House Bill No. 21 of this session, there is hereby appropriated out of any moneys in the General Fund and the State Employment Service Fund, not otherwise appropriated, the following sums of money, or so much thereof as may be necessary, for the purpose of paying the salaries, wages and other expenses of the departments and bureaus herein set forth for the period commencing on the 1st day of January, 1937, and ending on the 31st day of December, 1938.

## "LAND DEPARTMENT
### Administration
### (General Fund)

"For salaries, wages and all other expenses the sum of $60,500.00, less the sum of $4,680.00 for Salaries and Wages and the sum of $1,530.00 for Services Other Than Personal and Other Expense heretofore appropriated under the provisions of House Bill No. 21 of this session, to be classified as follows:

"Salaries of regular officers and employees.......$45,800.00
Services Other Than Personal.................. 8,000.00
Supplies ................................... 3,600.00
Equipment ................................ 1,500.00
Struc. and Non-Struc. Impv................... 100.00
Rents, Fixed Charges........................ 1,500.00

"TOTAL for salaries and wages and
all other expense......................$60,500.00

## "LAND DEPARTMENT
### Blister Rust
### (General Fund)

"For salaries, wages and all other expenses the sum of $38,000.00 to be classified as follows:

"Salaries and wages of regular officers and employees and extra help, Service Other Than Personal and All Other Expense the sum of......$38,000.00

## "LAND DEPARTMENT
### Timber Fire Protection
#### (General Fund)

"For salaries, wages and all other expenses the sum of $111,500.00, less the sum of $2,090.00 for Salaries and Wages and the sum of $10,272.00 for Services Other Than Personal and Other Expense heretofore appropriated under the provisions of House Bill No. 21 of this session, to be classified as follows:

| | |
|---|---:|
| "Salaries of regular officers and employees | $12,900.00 |
| Wages to Extra Help | 1,000.00 |
| | $13,900.00 |
| "Services Other Than Personal | 5,500.00 |
| Supplies | 1,000.00 |
| Equipment | 1,100.00 |
| Rents, Fixed Charges | 90,000.00 |
| "TOTAL for salaries and wages and all other expenses | $111,500.00 |

## "LAND DEPARTMENT
### Special Cruising
#### (General Fund)

"For salaries, wages and all other expenses the sum of $14,275.00, less the sum of $1,030.00 for Salaries and Wages and the sum of $397.00 for Services Other Than Personal and Other Expense heretofore appropriated under the provisions of House Bill No. 21 of this session, to be classified as follows:

| | |
|---|---:|
| "Salaries of regular officers and employees | $ 7,800.00 |
| Wages to Extra Help | 2,500.00 |
| | 10,300.00 |
| "Services Other Than Personal | 3,100.00 |
| Supplies | 600.00 |
| Equipment | 100.00 |
| Rents, Fixed Charges | 175.00 |
| "TOTAL for salaries and wages and all other expenses | $14,275.00 |

"INDUSTRIAL ACCIDENT BOARD
State Employment Service
(State Employment Service Fund)

"For salaries, wages and all other expenses the sum of $40,000.00, to be used and transferred by the State Treasurer to the 'State Employment Service Fund' in accordance with and pursuant to the provisions of Chapter 22 of the Laws of 1935, at the extraordinary session of Legislature."

It is not contended this chapter does not make appropriations from the general fund to the land department of amounts of money therein stated for salaries, wages and other expenses; for blister rust; for timber fire protection, and for special cruising. It is clear $40,000 was thereby attempted to be appropriated from the state employment service fund to the industrial accident board for state employment service. The question presented here is: Was any money appropriated from the general fund, by this chapter, for state employment service? If answer to that question is to be in the affirmative, justification for it cannot be gathered from the act nor from its title.

Had there been $40,000, or more, in the state employment service fund at the time the statute here under consideration was enacted, an intention to appropriate from the general fund to the industrial accident board, for state employment service, would never have been suspected. We were told by counsel, during the oral argument, that, at the time of the enactment of chapter 231, there was about $12,000 in that fund.

No suggestion of legislative intention can be found in the chapter to appropriate $40,000 from the general fund, all of which is money belonging to the state, for state employment service, but the expressed intention to appropriate that sum to that purpose is that it be from the state employment service fund, which is composed of money contributed by the state and the United States.

Article 7, sec. 13 of the constitution provides:

"No money shall be drawn from the treasury, but in pursuance of appropriations made by law."

In *State v. Parsons,* 57 Ida. 775, 69 Pac. (2d) 788, we quoted from *Epperson v. Howell,* 28 Ida. 338, 343, 154 Pac. 621, 623, a definition of an appropriation, as follows:

"An appropriation, within the meaning of the section of our constitution last above quoted is authority from the legislature *expressly given* in legal form, to the proper officers, to pay from the public moneys a specified sum, and no more, for a specified purpose, and no other. It follows that no money may lawfully be paid from the treasury except pursuant to and in accordance with an act of the legislature *expressly appropriating it to the specific purpose for which it is paid.* . . . . " (Emphasis added.)

See, also, *Herrick v. Gallet,* 35 Ida. 13, 204 Pac. 477; *Blaine County Inv. Co. v. Gallet,* 35 Ida. 102, 204 Pac. 1066.

In the chapter now under consideration no express authority is given to take $40,000 from the general fund and use it for state employment service and no such authority can reasonably be implied from anything expressed therein. On the contrary, the act says the money for such use shall be taken from the state employment service fund and the title says it is "An act making an appropriation . . . . out of the state employment service fund for the state employment service, . . . . "

Article 3, sec. 16 of the constitution is as follows:

"Every act shall embrace but one subject and matters properly connected therewith, which subject shall be expressed in the title; but if any subject shall be embraced in an act which shall not be expressed in the title, such act shall be void only as to so much thereof as shall not be embraced in the title."

In *Jackson v. Gallet,* 39 Ida. 382, 228 Pac. 1068, the rule stated in the fourth section of the syllabus is applicable here. It is:

"Where the title of a legislative act does not indicate or suggest an appropriation of state money, but negatives the idea of such appropriation, those portions of the act which purport to appropriate state money must fail."

The title to the act here under consideration does not indicate or suggest, but negatives, the idea of an appropriation

from the general fund to the industrial accident board for state employment service.

It is gravely doubted if necessity for use of this money, even in so important a matter as is unemployment service, can justify such destruction as is here called for of the rules provided for safeguarding public funds. There being less than sufficient money in the state employment service fund, and none having been appropriated to it from the general fund, it may be necessary that the governor call the legislature into extraordinary session to properly make the appropriation. The expense of such a session, when compared to the mischief which will result from destroying the safeguards placed about the treasury, is insignificant.