CASE 9.—ACTION BY JOSEPH BOSWORTH AGAINST NAPIER ADAMS AND OTHERS INVOLVING THE VALIDITY OF AN ACT OF THE KENTUCKY LEGISLATURE APPORTIONING SENATORIAL DISTRICTS OF THE STATE.—June 7.

## Adams, Etc., v. Bosworth

Appeal from Whitley Circuit Court.

M. J. Moss, Circuit Judge.

Judgment for plaintiff, defendants appeal. Reversed.

States—Legislature — Apportioning   Membership — Constitutional Law.—The apportionment of the State into Senatorial districts under Act June 28, 1893 (Laws 1893, p. 1204, c. 235), having been accepted for thirteen years without its validity being questioned, the constitutionality of the act may not be questioned on the ground that the act infringes Const. Sec. 6, providing that "all elections shall be free and equal," and Section 31, requiring an apportionment as nearly equal as may be of Senatorial districts.

C. W. LESTER for appellants.

This appeal involves the constitutionality of the act of the Kentucky Legislature approved June 28th, 1903, entitled "An Act dividing the State into thirty-eight Senatorial Districts;" also the validity of the Act of May 9th, 1890, adding Owsley county to what is the Seventeenth Senatorial District under an Act of said Legislature of February 19th, 1874.

A proposed primary election to be held on April 2, 1907, under the said Act of June 28, 1903, and the taking of steps preparatory thereto, is enjoined.

The judgment below, rendered after overruling the appellant's demurrer, held said two acts invalid and granted the injunction.

The grounds for a reversal briefly stated are:

1. The court had no power to enjoin an election on the steps being taken to hold it.

2. The enactment of the acts in question was a matter within the discretion of the Legislature. It is a political and not a judicial matter: Wise Case 79, Va., 269.

A reversal is respectfully asked.

WM. H. HOLT for appellees.

GEORGE DURELLE, E. L. WORTHINGTON, W. C. HALBERT of counsel.

### POINTS AND AUTHORITIES.

1. Whether a legislative apportionment act is constitutional is a judicial, and not a political, question.

2. A voter and candidate, or a voter only, may sue to test its validity.

3. A legislative apportionment act so grossly unequal as to population and territory as to show it was passed ignoring equality of representation is unconstitutional and therefore void: Purnell v. Mann, 105 Ky., 91; Massengale, Clerk, v. Lester, 101 Ky., 191; McPherson v. Blacker, 146 U. S., 2-24; Giddings v. Blacker, 93 Mich., 1; Houghton Co. Supervisors v. Blacker, 16 L. R. A., 432; Williams v. Prescott, Mich, July 24, 1906; Parker v. State, 133 Ind., 178; Brooks, Clerk, v. State, 162 Ind., 568; State v. Cunningham, 81 Wisc., 446; State v. Cunningham, 83 Wisc., 90; People v. Thompson, 155 Ill., 451; Denny, Clerk, v. State, 144 Ind., 503; State v. Wrightson, 56 N. J. Law, 126; Young v. Beckham, 24 Ky.

Law Rep., 2135; Neal-Young case, 24 Ky. Law Rep., 133; Brown case, 23 Ky. Law Rep., 2422; 18 L. R. A., 567, 578.

OPINION OF THE COURT BY JUDGE CARROLL—Reversing.

In this action, the validity of an act of the Legislature approved June 28, 1893 (Laws 1893, p. 1204, c. 235), apportioning the State into senatorial districts, is assailed upon the ground that it is in violation of section 6 of the Constitution, providing that "all electons shall be free and equal," and section 33, providing, in part, that "the first General Assembly after the adoption of this Constitution shall divide the State into thirty-eight senatorial districts and one hundred representative districts, as nearly equal in population as may be without dividing any county, except where the county may include more than one district, which district shall constitute a senatorial and representative district for ten years." The petition sets up in detail alleged gross inequality in the population of a number of the districts. The cause being submitted on the petition and exhibits, the lower court adjudged that the act of 1893, and also an act of the Legislature approved May 9, 1890, adding the county of Owsley to the seventeenth senatorial district, were each of them in violation of the Constitution of the United States and of the State of Kentucky, and both of said acts were declared null and void.

We do not deem it necessary to write an elaborate opinion in this case, but will virtually content ourselves with restating and adopting a portion of the opinion of this court in Ragland v. Anderson, 100 S. W. 865, 125 Ky. 141, 30 Ky. Law Rep. 1199, handed

down on March 20, 1907, in which opinion the court, after holding the act of March, 1906, redistricting the State into representative districts, void, said: "It is no answer to the demand of appellees that the act of 1906 be declared unconstitutional that it will follow that the act of 1893 must also be declared unconstitutional, because it created unequal representative districts, although in a less degree than that of 1906. The conclusion sought to be drawn does not follow. The act of 1893 has gone into effect and the government has been organized under it. To hold it void would be to throw the government into chaos; and this no court is required to do. It is now too late to question its validity. The next Legislature must be elected under it, and then we have no doubt the members, impelled by their sense of duty and the obligations of their oath of office, together with that spirit of justice which is the heritage of the race, will redistrict the State as the Constitution requires." The senatorial districts have remained unchanged since the apportionment of 1893, when the State was redistricted in accordance with the mandate of the Constitution adopted in 1891. During the thirteen years that elapsed between that time and the institution of this action, the apportionment then made has been accepted without question by the people of the entire State; and, if there was no other reason for now refusing to disturb it, this long acquiescence would be sufficient.

This action, although in the name of a few individuals, is in fact and truth instituted and prosecuted for the use and benefit of one of the political parties of the State, the adherents of which conceive themselves aggrieved by the alleged denial of fair and equal representation in the legislative department of the

State in the apportionment attacked. If the enactment complained of was invalid because it violated the constitutional requirements, the party complaining knew this fact thirteen years before this suit was commenced. Persons who believe that their political rights are injuriously affected by unconstitutional legislation cannot condone the wrong for a long period of years by passively consenting to it, and defer taking action until confusion, if not chaos, would result from the long delay. The courts were open to them in 1893 as well as 1906, and political parties, no more than individuals can sleep on their rights.' When it is sought to vacate enactments involving the life of one of the great co-ordinate departments of the government, the public interest and the orderly administration of affairs demand that action should be taken as soon as practicable after the condition objected to becomes known and effective. The argument that, if an act is invalid when passed, the vice continues to live in it as long as it remains on the statutes, and therefore it may be annulled at any time, is not sound when attempted to be applied to legislation that is political or administrative in its nature. It may be true that laches cannot give validity to a void act; but when no property right is involved, and the question is purely political and administrative, individuals or parties that have seen the act in operation for years, and the affairs of State carried on under it, without offering objection or making protest, will not be heard at a late day to question its validity. They must act in seasonable time, and not delay until the conditions they have acquiesced in and assented to have become firmly established as a part of the system of government.

The judgment of the lower court is reversed, with directions to dismiss the petition.