[No. 13812.    Department Two.    October 31, 1916.]

# THE STATE OF WASHINGTON, *on the Relation of Edgar G. Mills, Plaintiff*, v. I. M. HOWELL, *as Secretary of State, Respondent.*[1]

ELECTIONS—PRIMARY ELECTIONS—NOMINATIONS—"CONTEST"—TIME FOR FILING—STATUTES. Under Rem. 1915 Code, § 4829, providing for the correction of any error or wrong in the placing of names on the primary election ballot or the failure or neglect of any duty by any election official, upon the filing of an affidavit in the supreme or any superior court, and that any candidate who may desire to contest the nomination of any candidate may proceed by such affidavit so presented, provided the affidavit is presented within five days after completion of the canvass of the votes and not later, a proceeding in mandamus to require the secretary of state to certify the name of a candidate along with the names of several other candidates who admittedly received the requisite number of votes to go upon the ballot, is a "contest" of the nomination, and must be commenced within the five days limited, or it is too late.

MANDAMUS—LIMITATIONS—MERITS. Where a mandamus is filed too late, the merits will not be examined to settle disputed questions of law.

Application filed in the supreme court October 26, 1916, for a writ of mandamus to compel the secretary of state to certify the relator's name as a nominee for the office of supreme judge. Denied.

*J. G. Dunaway, W. D. Lane*, and *John T. Casey*, for relator.

*The Attorney General* and *L. L. Thompson, Assistant*, for respondent.

MOUNT, J.—This is a proceeding in mandamus to require the secretary of state to certify the relator's name to the several county auditors in the state as a nominee for judge of the supreme court. It is alleged in the petition, that the

[1]Reported in 160 Pac. 760.

relator was a candidate at the primary election for that office; that, at the said election, there were 565,103 votes cast for judges of the supreme court, and that 282,552 votes is a majority thereof; that the following candidates received the following number of votes:

Emmett N. Parker.....................124,218
Mark A. Fullerton....................124,103
George E. Morris.....................119,897
Edgar G. Mills.......................109,699
C. E. Claypool....................... 87,186

that none of the candidates received a majority of the votes cast; that the secretary of state has arbitrarily and unlawfully certified that there were only 237,794 votes cast for the offices of judges, and that none of the candidates have received a majority of said votes, and the respondent, Howell, arbitrarily and unlawfully refuses to certify the name of the petitioner as a nominee, and has certified that the first three candidates named have received a majority of the votes, and are therefore entitled to go upon the election ballot without opposition.

This petition was filed on October 26, 1916, and an order to show cause was issued against the secretary of state, who makes a return to the effect that, in accordance with the provisions of Rem. 1915 Code, § 4828, the state canvassing board, composed of the secretary of state, the state treasurer, and the state auditor, met in the office of the secretary of state, at Olympia, on the 17th day of October, 1916, for the purpose of canvassing the returns of the primary election held on September 12, 1916; that the said canvassing board completed the canvass of the returns on October 17, 1916, and on that day prepared and filed with the respondent a certified statement showing that the total number of votes cast for judges of the supreme court did not exceed 235,459 votes; that the candidates Parker, Morris, and Fullerton re-ceived a majority of the votes cast, and were therefore entitled

to go upon the election ballot for the November election un-opposed; that thereafter, as secretary of state, he certified to each and every county auditor in the state these names to be placed upon the ballot.

The *Attorney General*, representing the respondent, con-tends that this application, being filed nine days after the completion of the canvass of the returns of the primary elec-tion by the state canvassing board, was filed too late, under the provision of § 4829, and that this court now has no juris-diction to determine the merits of the application. This con-tention must be sustained. Section 4829, Rem. 1915 Code, provides:

"Whenever it shall appear by affidavit to any judge of the supreme court or superior court of the county that any error or omission has occurred or is about to occur in the printing in the name of any candidate on official ballots, or that any error has been or is about to be committed in printing the ballots, or that the name of any person has been or is about to be wrongfully placed upon such ballots, or that any wrong-ful act has been performed or is about to be performed by any judge or clerk of the primary election, the county au-ditor, canvassing board or member thereof, or by any person charged with a duty under this act, or that any neglect of duty by any of the persons aforesaid has occurred, or is about to occur, such judge shall, by order, require the officer or person or persons charged with the error, wrongful act or neglect, to forthwith correct the error, desist from the wrong-ful act, or perform the duty, and to do as the court shall order, or to show cause forthwith why such error should not be corrected, wrongful act desisted from, or such duty or or-der not performed. Failing to obey the order of such court shall be contempt. Any candidate at such primary election who may desire to contest the nomination of any candidate for the same office at said primary election may proceed by such affidavit so presented: Provided, that such affidavit may be presented within five days after the completion 'of the can-vass by said canvassing board, and not later, and the candi-date whose nomination is so contested shall, by order of such judge, duly served, be required to appear and abide by the orders of the court to be made therein."

The record shows that the canvassing board completed the canvass of the returns in the office of the secretary of state on the 17th day of October, 1916, and filed its report on that day. This application was not presented to this court until the 26th day of October, 1916, or nine days after the completion of the canvass by the state canvassing board. The statute above quoted provides that "such affidavit may be presented within five days after the completion of the canvass by said canvassing board, and not later . . ." It is plain, therefore, that the relator in this case has not filed his application within the time limited by statute. The relator contends that he is not contesting other nominations for the same office, but it seems quite clear that this is a contest for the nomination. The word "contest" used in this statute refers, of course, to the causes for contest which are named in the first part of this section. If the canvassing board, or any officer named therein, has made an error in the count, or has done wrongful or negligent acts to the detriment of any candidate, that would be reason for contest, and the word "contest," as used in the provision above referred to, clearly relates to the causes therefor, as therein stated. It seems too plain for argument that the relator here is contesting for the nomination, even though he is not contesting the fact that others were also nominated. The limitation of five days was placed within this statute for a good reason. Under the provision of Rem. 1915 Code, § 4800, it becomes the duty of the secretary of state to certify to the clerk of the board of county commissioners of each county within the state the names of candidates nominated for state and district offices. This must be done not less than twenty days nor more than thirty days before a general election. After nominations are made, tickets must be printed and distributed to the various voting precincts throughout the state. This necessarily requires time, and as the time is short between the date of the canvass of the primary election returns and the date of the election, it becomes necessary to hasten the time when con-

tests of any kind may be instituted, and the legislature concluded that five days' time after the canvassing board had made its report was ample time within which contests might be instituted, and they therefore said that these contests "may be presented within five days after the completion of the canvass by the canvassing board, and not later . . ." If contests were delayed after that time, and may be brought at any time before the election, the result might follow that no election could be had upon important offices at the November election. The fixing of this five-day limitation was a reasonable one, and unless contests are instituted within the time, the courts have no jurisdiction thereover. *State ex rel. Socialist Labor Party v. Nichols,* 51 Wash. 79, 97 Pac. 1087.

Counsel for the relator insist that, if we should conclude that the application was filed too late, we should examine into the merits of the case in order to settle disputed questions which arise upon the primary law. Were we to do this, the result would be simply dictum and of no binding force.

The relator certainly knew that he must file his application within the five days' time, and if he was satisfied that he had a meritorious case, he no doubt would have done so. Not having done so, this court cannot determine questions over which it has no jurisdiction.

The writ is therefore denied.

MAIN, HOLCOMB, and ELLIS, JJ., concur.

CHADWICK, J. (concurring)—Without taking issue with the argument made by the majority, it seems to me that there are other and more controlling reasons for denying the petition of relator. The relator did not receive a majority of the votes cast, or if he did receive such majority, he is not, under the law, entitled to have his name placed upon the general election ballot. There has been much, and it seems to me unnecessary, confusion in considering the question of the majority of votes cast with reference to judicial offices. The confusion comes from a disposition to treat the words "ma-

jority of the votes cast" as synonymous with a majority of all the ballots, that is to say, the paper ballots cast by the electors.

The word ballot, in the sense in which it has thus been employed, is not in the statute, and cannot be read into it by any right rule of construction. It might be so held if there were but two candidates running and one to elect, but from the nature of things, the words "majority of the votes" cannot be held to be a majority of the paper ballots cast, when there are several candidates and several places to be filled and there is no compulsion or duty upon the voter 'to vote for the full number to be elected. If we were to accept the terms as synonymous, we would be compelled to say that a ballot, if the voter voted for two names, would be two-thirds of a vote, and if he voted for one name, one-third of a vote. Such a construction would lead not only to the ridiculous, but to the impossible as well.

Taking, therefore, the plain words of the statute, "a majority of the votes cast," every individual expression of the elector's will is a vote. Each vote cast for a candidate is a vote. It is admitted that there were individual expressions of the electors as follows:

Judge Parker ....................... 124,218
Judge Fullerton ..................... 124,103
Judge Morris ....................... 119,897
Edgar G. Mills...................... 109,699
C. E. Claypool...................... 87,186

Loosely considered, it may be said that a candidate, where three are to be elected, is running against the field, but it cannot be so, for that would be running one candidate for *one* of the *three* positions, against, not one other place or candidate for the same place, but against *two* other places and all candidates. He would be against three fields.

For the purpose of the argument, we may assume that the supreme court is a body divisible into nine parts. Three parts are to be filled. A certain number of the electors regis-

ter their choice for Judge Parker for *one* of these places. It does not follow that, because they vote for two other men for two *other* places, they have cast either one or two votes against Judge Parker. The candidate has no interest in the other places. Nor has the elector who votes for Judge Parker any intention of reducing his vote, or which is the same thing, creating by his vote a standard that will record his vote for others, or any part of it, against the affirmative expression of his will. It follows, by this reasoning, that if there are two candidates and one received more votes than his opponent, he alone is entitled to go upon the general election ballot; and, by the same reasoning, if there are four candidates and two places to be filled, or six candidates and three places to be filled, that is to say, double the number of candidates, or a less number than double the number, the three receiving the highest vote receive a majority of all the votes cast.

To illustrate: There are three places to fill. Judge Parker has 124,218 votes. He is entitled, under the law, to the first place on the ballot unopposed, unless some one of the several candidates can show that he, as an individual, has a greater number of votes for the same place. Each candidate, in turn, must fail, for none can say, "I have more votes for any of the places to be filled than Judge Parker has."

The relator having received less than candidates Parker, Fullerton and Morris, is in no position to challenge their right to go upon the ballot as majority candidates.

Upon this theory, it will always be possible to determine a majority, whereas counsel for relator frankly admits that, upon his theory, either no one may receive a majority, or a greater number than one-half of the candidates (double the number being on the primary ballot) can receive a majority. To hold, where there are three nominations to be made, and there are six or a lesser number of candidates, all of the candidates, or any greater number than three, can receive a majority of the votes cast would be to violate every canon

of reason and common sense. It would be to say that the legislature provided for a selection by majorities, and then deliberately provided a scheme whereby majorities (although there were candidates equal to double the number or less of the places to be filled) could not be obtained.

We are bound to give life to all the words of a statute if it can be done. To hold to the contrary of my conclusion would write the word "majority" out of the statute, and invite the abuse of "plunking" for one candidate, whereas every elector should perform his full duty as a citizen and vote for three. The only way other than this to save one candidate for one place from measuring the votes for one place against the votes for all the other places would be to force the presumption that every elector had performed his whole duty and had voted for three men. There is no showing that they did not do so, and the presumption might be sustained in principle. Upon this theory, there were 565,103 votes cast. This, divided by three, the number of places to be filled, the votes—ballot votes—would be 188,367. A majority would be 94,184. Clearly, then, the three having the higher number of votes would be the nominees, for there cannot be more than three *majority* nominees upon the ballot, as I shall hereafter attempt to show. To rule otherwise would be to rule that two and two do not make four, or that a fraction may be more than the whole.

But if it be held by some strange process of reasoning that the relator did receive a majority of all the votes cast, he is still not entitled to have his name upon the ballot. The statute, Rem. 1915 Code, § 4842, reads as follows:

"When there are to be elected at any general election one or more judges of the supreme court, or of the superior court of any county, the candidates for each respective office whose names are to be placed on the general election ticket shall be determined as follows: The number of candidates equaling the number of judicial positions to be filled who receive the highest number of votes at the primary election, and an equal number of candidates for such positions, providing

there are such candidates, who receive the next highest number of votes, shall be the candidates for such respective offices and their names shall appear on the general election ballot under the designation of such respective offices: Provided, however, that where any candidate for any such office shall receive a majority of all votes cast at such primary election for such office, the name or names of such candidates receiving such majority shall be printed separately on the general election ballot, under the designation 'Vote for . . . . . . . ,' and the name or names of no opposing candidate or candidates shall be printed on such ballot in opposition to such candidate or candidates, but spaces equaling the number of such majority candidates shall be left following such name or names, in which the voter may insert the name of any person for whom he wishes to cast his ballot."

If there be any doubt or uncertainty in the statute requiring construction, we are not compelled to go beyond the statute for a rule of construction. The primary election law, as we said in a former opinion, is intended to be a comprehensive scheme for the selection of candidates to go upon the general election ballot, and it is a familiar rule of construction that where one part of an act is ambiguous or uncertain, if the legislature has put a construction upon some analogous part of the act, the court will follow the legislative interpretation, to the end that, if confusion is to be prevented in the one case, it ought to be prevented in the other by the same method that has been suggested by the legislature.

In Rem. 1915 Code, § 4827, it is provided:

"In the event that there are more than one position of the same kind to be filled and more candidates of any political party receive majorities of the votes of such party cast at such election than there are positions to be filled, then in that event the number of candidates equal to the number of positions to be filled receiving the highest number of votes shall be the nominees of such political party for such positions."

True it is that this section refers to candidates of political parties, but, under the rules of construction that I have suggested, we may adopt it as a guide reflecting the will of the

legislature. And now, in this case, granting, for the sake of argument only, that the relator did receive a majority of all the votes cast (which does not appear upon the face of the returns), it leaves a greater number of candidates than. there are positions to be filled, and the words "the one having a majority" of all the votes cast must be construed as the one having the greater number of votes cast, for it is obvious that, as between majority candidates, pluralities must prevail. Otherwise, the intent of the statute would be entirely overcome.

Another reason for saying that this provision has application to judges of the supreme and superior courts is that it could have no application to any other condition. Legislative positions are the only positions outside of the office of judges of the supreme and superior courts where there is more than one position of the same kind to be filled, and as to the legislative positions, it is elsewhere provided that the persons receiving a plurality of the votes are the candidates for the positions, and the only candidates for the positions, regardless of whether they received a majority of the votes or not. Hence this provision, in reality, can apply only to the nonpartisan offices of judges of the supreme and superior courts.

The relator is not entitled to have his name upon the ballot, and the writ is properly denied.