518 P.2d 969

**The STATE of Idaho, Respondent,**

v.

**Sam J. J. PONTIER, Appellant,**
**and**
**David Gonzales, Defendant.**

**No. 11091.**

Supreme Court of Idaho.

Jan. 15, 1974.

Eberle, Berlin, Kading, Turnbow & Gillespie, John L. Runft, Michael A. Greene, Boise, for appellant.

W. Anthony Park, Atty. Gen., J. Dennis (J. D.) Williams, Asst. Atty. Gen., Boise, for respondent.

BAKES, Justice.

Defendant-appellant was prosecuted by a felony information for illegal possession of a narcotic drug, to wit, marijuana. The case was tried before a jury which returned a verdict of guilty. The district court accordingly entered a judgment of conviction from which defendant brings this appeal. We modify the judgment of conviction to reflect a conviction for a misdemeanor and remand for sentencing.

On the evening of October 3, 1970, police officers from the Boise City Police Department and the Ada County Sheriff's Department received information from an anonymous female tipster that marijuana was growing in the backyard of a residence in Boise. After determining that appellant was listed as the occupant of the house in the Boise City Directory, the police officers proceeded to the vicinity of the house. Upon arrival, the officers proceeded to the residence of a next door neighbor and requested permission to enter her backyard and observe the backyard of appellant for suspected marijuana plants. After receiving permission, the officers went into the neighboring backyard. Looking over a short picket fence and through some overhanging foliage, the officers observed what they believed to be marijuana plants growing near the garage of appellant's home on the rear of the lot. After a uniformed officer arrived to support the officers, the officers proceeded to the front of the house to arrest the occupants therein for possession of marijuana. A Miss Fullmer responded to their knock at the front door.[1] The evidence at this point is conflicting concerning whether Miss Fullmer gave them permission to enter the house. However, the officers did enter the residence and immediately upon

---

[1]. As the officers approached the front of the house they heard a gunshot report in the immediate vicinity. One of the officers returned to the rear of the house to ensure that the officer stationed in back was not in any danger. Upon finding him in no danger, the officer returned to the front of the house and proceeded to the front door of the house with the other officer. Miss Fullmer responded to the officers' knock at the door and when asked about the gunshot, indicated that she too had heard the gunshot and was alarmed by it. While this incident adds a degree of intrigue to the case, it is not crucial to a determination of the relevant issues.

entry arrested Miss Fullmer for illegal possession of narcotics. At the same time the officers inquired of Miss Fullmer concerning the whereabouts of appellant. Miss Fullmer explained that he was hunting but would return at any time. Seeing some guns leaning up against a wall in the house apparently caused the officers to disbelieve Miss Fullmer so they proceeded to conduct a general search of the house and the basement in an attempt to find appellant. They did not locate appellant; however, during this search the officers observed what appeared to be some hashish residue in a partially opened plastic container on the bottom shelf of a bedstand in one of the bedrooms. A water pipe of the type used to smoke marijuana was also observed in a hutch cupboard in the house. Shortly thereafter appellant returned from his hunting trip with co-defendant Gonzales who was at the time living in the home with appellant. The officers arrested Mr. Gonzales and appellant for possession of narcotics. The officers then obtained a search warrant to search the house for marijuana based upon the marijuana plants growing in the backyard, the apparent hashish in the container in the bedstand and the water pipe. In a subsequent search pursuant to this warrant, the officers discovered additional marijuana and drug paraphernalia.

Appellant made various pretrial and trial motions, including motions to suppress evidence, a motion to quash the jury panel on the basis of its disproportionate age representation, and a motion to have the case tried as a misdemeanor instead of a felony. All of the above motions were denied by the trial court.

■ Appellant first assigns as error the trial court's restriction of his *voir dire* examination of prospective jurors. Appellant's counsel attempted to read various articles concerning the increased usage of marijuana and recommendations that the use of marijuana be legalized and inquired of the jurors whether or not they could be-

lieve such articles. Objection was sustained to these questions. The general rule regarding *voir dire* examination was stated by this Court in State v. Bitz, 93 Idaho 239, 460 P.2d 374 (1969), quoting with approval from State v. McKeehan, 91 Idaho 808, 430 P.2d 886 (1967):

> " 'The rule in this jurisdiction is that great latitude is allowed in the examination of veniremen upon their *voir dire* for the purposes of determining whether there is sufficient ground to challenge the veniremen for statutory cause, I.C. §§ 19–2017 to .19–2022, *or* whether it is expedient to challenge them peremptorily, I.C. §§ 19–2015 and 19–2016. The scope of *voir dire*, examination of veniremen in a criminal case, however, is a matter resting in the discretion of the trial court, the exercise of which will not be reversed except in case of abuse.' " 93 Idaho at 243, 460 P.2d at 897.

We affirm the rule set out above and find that there was not an abuse of discretion in the trial court's action in the instant case. An examination of the trial court's ruling indicates that the court allowed appellant's counsel wide latitude in its inquiry into possible bias or prejudice of prospective jurors regarding marijuana. The court expressly stated that appellant could inquire about whether the "jury believes that that is a good law or a bad law or something of that kind, and determine your bias on that inference." The only actual restriction placed on the scope of *voir dire* was that there could be no questions referring to specific articles and editorial comments on whether marijuana should be legal or not. Such a restriction can hardly be said to have been an undue restriction on the *voir dire*.

■ Appellant next assigns as error the trial court's refusal to allow appellant's motion to quash the jury panel and petit jury drawn therefrom because of their disproportional age distribution relative to the defendant and the reasonable cross section of the population from which they were

drawn. Appellant contends that since he was 32 years of age on the date of trial, and the average age of the jury panel selected to try appellant was 47 years of age, that he was denied due process of law and the right to be tried by an impartial jury.

The jury panel selected for appellant's trial was drawn under the "Uniform Jury Selection and Service Act," I.C. § 2–201 et seq. I.C. § 2–202 provides:

> "2–202. *Policy of State.*—It is the policy of this state that all persons selected for jury service be selected at random from a fair cross section of the population of the area served by the court, and that all qualified citizens have the opportunity, in accordance with this act to be considered for jury service in this state and an obligation to serve as jurors when summoned for that purpose."

Every reasonable presumption must be indulged in favor of the constitutionality of an enactment of the legislature. Idaho Telephone Co. v. Baire, 91 Idaho 425, 423 P.2d 337 (1967); Caesar v. Williams, 84 Idaho 254, 371 P.2d 241 (1962). Appellant made no argument that the Uniform Jury Selection and Service Act was unconstitutional, nor has he made any showing that the act was not followed. Additionally, appellant did not avail himself of the procedures set out in the act to challenge the jury panel, nor did he submit a sworn statement in support of his motion as required by statute. I.C. § 2–213. The mere fact that the jury panel selected to hear appellant's case was allegedly older than a cross section of the county is not material where the act was followed and there is nothing in the record to indicate a systematic exclusion of an identifiable class of people. The random selection of jurors as prescribed in the act will not in every instance guarantee a perfect balance of all races, ages, religions, sex, economic status, etc., by virtue of the inherent processes of random selection. However, the random selection delineated in the Uniform Jury Selection and Service Act satisfies constitutional requirements that there be no systematic and arbitrary exclusion of an identifiable class of people. United States v. Gordon, 455 F.2d 398 (1972, 8th Cir.), cert. denied, 406 U.S. 970, 92 S.Ct. 2428, 32 L. Ed.2d 670; State v. McConville, 82 Idaho 47, 349 P.2d 114 (1960).

Appellant next assigns as error the trial court's denial of his motion to suppress the evidence in the case. Appellant argues that there were four situations wherein the police acted improperly in obtaining evidence which was subsequently used against him at trial.

First, appellant contends that the police officer's observation of the marijuana plants in appellant's backyard was an illegal and unconstitutional invasion of appellant's right to privacy. Appellant strenuously argues that Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), is controlling in the instant case and that the police observation of appellant's backyard was a search within the purview of the Fourth Amendment. The Katz case, *supra,* dealt entirely with audible communication and electronic surveillance by the police, though it did espouse a basic principle that the Fourth Amendment protects from invasion by the police those actions and communications which an ordinary person would reasonably expect to be private. The court's statement that the "Fourth Amendment protects people, not places", Katz, *supra,* was followed by the statement, "What a person knowingly exposes to the public, even in his own home, or office, is not a subject of Fourth Amendment protection." The backyard of appellant's home was enclosed by a waist high picket fence and foliage growing at various locations along the fence. Planting marijuana plants in a backyard enclosed only by a picket fence and intermittent vegetation is not an action reasonably calculated to keep the plants from observation since it is certainly foreseeable that a reasonably curious neighbor, while working in his yard, might look over the picket fence into appellant's yard and see the plants,

whether or not he knew what they were.[2] Appellant urges this Court to find that the police observation from the neighbor's yard was a search and that the "plain view" exception to the warrant requirement of the Fourth Amendment is applicable only for the "inadvertent" discovery of incriminating evidence. We find no compelling reason to require that the discovery of evidence in plain view must be inadvertent before it can be seized and used as competent evidence. If we so held, we would find ourselves in the anomalous position of imposing a duty upon the police to investigate information received concerning the commission of crimes but not allow into evidence any contraband seized which was in the plain view of the officers where they were in a place where they had a right and duty to be. United States v. Freeman, 426 F.2d 1351 (9th Cir. 1970); United States v. McMillan, 350 F.Supp. 593 (D.C. D.C., 1972); United States v. Wright, 146 U.S.App.D.C. 126, 449 F.2d 1355 (1971) cert. denied, 405 U.S. 947, 92 S.Ct. 986, 30 L.Ed. 2d 817 (1972). Appellant urges that Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971), limits the plain view doctrine to "inadvertent" observations. Justice Stewart's opinion which proposed the adoption of the inadvertent requirement was signed by only four members of the Court. Justices Black, Blackmun and White, and Chief Justice Burger expressly disagreed with Justice Stewart on this point. Since the inadvertent requirement was not espoused by a majority of the Court, it is not binding upon this Court as precedent. North v. Superior Court of Riverside County, 8 Cal.3d 301, 104 Cal.Rptr. 833, 502 P.2d 1305 (1972). Accordingly, we affirm our holding in State v. Loyd, 92 Idaho 20, 435 P.2d 797 (1967), and hold that objects falling in the plain view of an officer who has a right to be in the position to have that view are subject to seizure and may be introduced into evidence.

 Appellant's next contention is that the police did not have reasonable cause to enter the Pontier house to make an arrest without a warrant and that an arrest without a warrant is *per se* unreasonable absent a showing of exigent circumstances. The lawfulness of an arrest for a state offense is to be determined by state law. Ker v. California, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963); Burks v. United States, 287 F.2d 117 (9th Cir. 1961). I.C. § 19–603 delineates the situations where a police officer can make an arrest without a warrant. I.C. § 19–603 provides:

"19–603. *When Peace Officer May Arrest.*—A peace officer may make an arrest in obedience to a warrant delivered to him, or may, without a warrant, arrest a person:

1. For a public offense committed or attempted in his presence.

2. When a person arrested has committed a felony, although not in his presence.

3. When a felony has in fact been committed and he has reasonable cause for believing the person arrested to have committed it.

4. On a charge made, upon a reasonable cause, of the commission of a felony by the party arrested.

5. At night, when there is reasonable cause to believe that he has committed a felony."

This authority to make arrests extends to private dwellings when there is reasonable

---

2. In Dillon v. Superior Court, 7 Cal.3d 305, 102 Cal.Rptr. 161, 497 P.2d 505 (1972), the California Supreme Court held that if the observation of marijuana plants had been made from a neighbor's property by an officer with the neighbor's consent, there would have been no illegal search. *Compare*, People v. Fly, Cal.App.2d Dist., 110 Cal.Rptr. 158, wherein the California Appellate Division held that a narcotics agent's actions in squeezing into a narrow area between the suspect's fence and an acquiescent neighbor's garage to peer through heavy foilage and observe marijuana plants growing in the suspect's backyard violated the suspect's reasonable expectation of privacy. The court observed that each case stands on its own facts. *See also*, United States v. Gray, 484 F.2d 352 (CA 6, 8–7–73).

ground for believing the person to be arrested is located in the dwelling. I.C. § 19–611 provides:

> 19–611. *Breaking Doors and Windows.* —To make an arrest, if the offense is a felony, a private person, if any public offense, a peace officer, may break open the door or window of the house in which the person to be arrested is, or in which there is reasonable ground for believing him to be, after having demanded admittance and explained the purpose for which admittance is desired."

The record indicates that before the police went to investigate the information concerning the marijuana plants growing in the backyard of appellant's residence they ascertained from the latest Boise City Directory that appellant was the listed occupant of the house. Upon further investigation the police observed what they, as trained narcotics officers, believed to be two marijuana plants growing in the backyard of appellant's residence. The plants were carefully cultivated and had been watered that day. This distinguishes this case from the situation suggested by the dissent wherein a fleeing thief might discard stolen property upon a person's land, thus subjecting the occupants of the land to arrest. The record also indicates that a sports car was parked behind the house and that there were lights on in the house. In dealing with probable cause, we deal with probabilities. These are not technical, but practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act. State v. Loyd, *supra*. We cannot say as a matter of law that the facts as stated above and found by the trial court in the denial of the motion to suppress do not support a finding of probable cause to believe that a crime had been committed by appellant, and that appellant was home at the time. Dillon v. Superior Court of Santa Barbara, 7 Cal.3d 305, 102

Cal.Rptr. 161, 497 P.2d 505 (1972). Certainly it would have been better had the police followed proper procedures and taken the time to secure a warrant for the arrest of appellant Pontier. However, the sufficiency of the procedures employed by the police are to be determined by their own legality and not on the basis of whether or not a better procedure could have been employed.

We recognize that there is a serious question of whether a nighttime entry into a dwelling to arrest a person reasonably believed within, upon probable cause that he had committed a felony, is consistent with the Fourth Amendment prohibiting unreasonable searches and seizures.[3] This issue has not been definitively passed on by the United States Supreme Court. In fact, the Court appears to be decisively split upon that precise issue, as evidenced by Justice Stewart's statement in Coolidge v. New Hampshire, *supra*, 403 U.S. at page 480, 91 S.Ct. at page 2045:

> "Indeed if Mr. Justice White is correct that it has generally been assumed that the Fourth Amendment is not violated by the warrantless entry of a man's house for purposes of arrest, it might be wise to re-examine the assumption. Such a re-examination 'would confront us with a grave constitutional question, namely, whether the forceful nighttime entry into a dwelling to arrest a person reasonably believed within, upon probable cause that he had committed a felony, under circumstances where no reason appears why an arrest warrant could not have been sought, is consistent with the Fourth Amendment.'"

Until such time as a majority of the United States Supreme Court rules on that issue, we must indulge the Idaho statute with every reasonable presumption of constitutionality. Idaho Telephone v. Baire, *supra*; Caesar v. Williams, *supra*.[4]

3. At the time of appellant's arrest, the offense of possession of marijuana was a felony. The police officers' actions in making the arrest were governed by the laws relating to felony arrests in effect at that time, notwithstanding the fact that the legislature subsequently altered the proscribed penalties for possession of marijuana.

4. The views expressed herein were also the views of the trial court which held in its

Appellant's third contention is that the general search of the house was an illegal search. The record supports the trial court's finding that the police made a general search of the house looking for appellant Pontier. Before doing so, they inquired of Miss Fullmer as to the whereabouts of appellant. Miss Fullmer indicated that he was hunting. Seeing some guns and vest leaning up against the wall across the room caused the officers to disbelieve Miss Fullmer and to conclude that appellant was hiding somewhere in the house. It was not unreasonable for the police at that point to make a general search of the house to ascertain if appellant was hiding somewhere in the house. Guevara v. Superior Court, 7 Cal.App.3d 531, 86 Cal. Rptr. 657 (1970); People v. Block, 6 Cal. 3d 239, 103 Cal.Rptr. 281, 499 P.2d 961 (1971). The record indicates that during the course of this general search for appellant, the officers observed what they believed to be hashish in an open container in plain sight on a shelf of a nightstand, and a water pipe of the type commonly used in smoking marijuana on an open shelf of a hutch in the dining room. Merely observing that which is in plain view is not a search prohibited by any rule of law. Guevara v. Superior Court, *supra.* The officers were not bound to overlook the hashish or the water pipe. They could use their observations as probable cause sufficient to support the execution of the search warrant. As stated in People v. Block, *supra*:

> "A corollary of the 'plain sight' rule, and one which is pertinent to the instant case, is that 'During a lawful search of premises for persons believed to be in hiding, police officers may seize contraband evidence "in plain sight." ' " 6 Cal.

3d 239, 103 Cal.Rptr. 281 at 283, 499 P. 2d 961 at 963.

Appellant's next contention is that the additional evidence obtained pursuant to the later search, after obtaining a search warrant, should have been excluded because the search was based upon information obtained during the general search for appellant and that this general search was illegal, and therefore the evidence obtained could not constitute probable cause for the issuance of a search warrant. The validity of the general search of the house for appellant has been approved above, and the seizing of the hashish and water pipe in the course of that search for appellant has also been approved. Therefore, those facts were properly the subject of probable cause evidence for the search warrant. Therefore, the additional marijuana and drug paraphernalia obtained in the subsequent search pursuant to the search warrant was admissible.

The remaining assignment of error to be considered is appellant's contention that the trial court erred in refusing to allow appellant's motion to have the act of illegal possession of marijuana tried as a misdemeanor rather than a felony, pursuant to the Uniform Controlled Substances Act.

Appellant was charged in the information with violating what was then I.C. § 37–3202, which made it a crime to unlawfully possess a narcotic drug, and providing for a penalty of imprisonment in the State Penitentiary for a term not to exceed ten years. In 1971, the legislature repealed the 1967 narcotics law under which appellant was charged and enacted the Uniform Controlled Substances Act in place thereof.

memorandum decision denying appellant's motion to suppress the evidence, that probable cause alone was sufficient to justify an arrest under the Idaho statute and the Constitution. However, the trial court found that even if "exigent circumstances" were required, the gunshot that occurred as the officers approached the door constitute such

"exigent circumstances" sufficient to justify the entry into the house. It is our view that exigent circumstances are not required if probable cause exists; therefore, we make no comment on the trial court's finding that the gunshot constituted sufficient exigent circumstances to justify the entry into the house.

The Uniform Controlled Substances Act provides in part:

"37–2748. *Pending Proceedings.*— (a) · Prosecution for any violation of law occurring prior to the effective date [Effective May 1, 1971] of this act is not affected or abated by this act. If the offense being prosecuted is similar to one set out in article IV of this act, then the penalties under article IV apply if they are less than those under prior law."

Under article IV of the Act, the unlawful possession of marijuana is a misdemeanor, I.C. § 37–2732(c),[5] with a maximum punishment of imprisonment in the county jail for a term not exceeding six months or by a fine not exceeding three hundred dollars or both. I.C. § 18–113. The classification of an offense as either a felony or a misdemeanor is determined by the maximum possible punishment which may be imposed upon conviction. State v. O'Dell, 71 Idaho 64, 225 P.2d 1020 (1950); I.C. § 18–111.

▆▆▆ Since the maximum possible sentence which could have been imposed upon appellant was six months in the county jail and fine of $300, the offense which appellant was charged with having committed should have been classified as a misdemeanor and the trial conducted accordingly. The respondent State of Idaho argues that the growing of marijuana under the Uniform Controlled Substances Act is "manufacturing" which is a felony. However, this argument misconstrues the wording of I.C. § 37–2748. The section provides "if the *offense* being prosecuted is similar to one set out in article IV of this act . . . ." (Emphasis added). The offense being prosecuted in the information was "unlawful possession of marijuana." Under the Uniform Controlled Substances Act, unlawful possession of marijuana was a misdemeanor and therefore, by virtue of I.C. § 37–2748, appellant's conviction is for a misdemeanor and not a felony.

▆▆ Our action in reducing this conviction from a felony to a misdemeanor raises the question of whether or not appellant should receive a new trial because of possible prejudice resulting from being charged and tried as a felon whereas in fact at the time of trial the crime charged was a misdemeanor. However, in view of the overwhelming evidence produced at trial supporting appellant's conviction, we cannot say as a matter of law that appellant was prejudiced to the extent where it is necessary to require a new trial any more than a person who is charged with a felony and is found guilty of a lesser included offense which is a misdemeanor is so prejudiced.

The judgment of conviction must be modified and a new judgment entered finding appellant guilty of a misdemeanor. Similarly, the sentence imposed on defendant is vacated with directions to remand and sentence appellant as a convicted misdemeanant.

Remand for proceedings consistent with this opinion.

SHEPARD, C. J., and DONALDSON and McFADDEN, JJ., concur.

McQUADE, Justice (dissenting).

I am unable to agree with the majority's position that the arrest of Pontier complied with the Fourth Amendment. I fear that the majority's position will erode the Fourth Amendment's protection of the public from unreasonable governmental interference.

The record discloses that after observing two marijuana plants in the backyard of Pontier's residence, the police went to the house to arrest Pontier and all persons residing therein without making any effort to obtain an arrest warrant for Pontier or a search warrant for the house. This Court has held that "A police officer may make an arrest without a warrant when a felony has been committed and he has rea-

---

5. Chapter 215, 1971 Idaho Session Laws, at p. 958. This section was amended in 1972 to make the possession of marijuana an indictable misdemeanor with a possible punishment upon conviction of not more than one year imprisonment, or a fine of not more than $1,000.00, or both. Ch. 133, 1972, at p. 272.

sonable cause to believe that the person or persons arrested have committed it."[1] The police did not possess sufficient information to meet the reasonable cause test and thus the arrest of Pontier and the search of his house was in violation of the Fourth Amendment's prohibition against unreasonable searches and seizures.

Pontier was arrested and charged with violation of I.C. § 37–3202 [2] which makes it unlawful for any person to be in possession of marijuana. To determine if the police had reasonable cause to arrest Pontier, the facts and circumstances known to the police prior to entry into his residence must be measured against the elements of the offense to determine if there was reasonable cause to believe that Pontier was in violation of I.C. § 37–3202.

The elements of the offense of possession of marijuana are possession of the narcotic, intent to possess it and knowledge that it is marijuana. The record reveals that no physical possession of the plants was established because neither Pontier nor anyone else was ever observed near the plants. The only other means of establishing possession is through the doctrine of constructive possession which was recently applied by this Court in the case of State v. Segovia.[3] In that case a reliable informant was sent to purchase marijuana from Segovia. The transfer was not observed by the police, but the informant later rendezvoused with the officers with the amount of marijuana he had agreed to purchase and stated it had come from Segovia. The police arrested Segovia and in his appeal to this Court, he argued that the State had not proven possession of the marijuana, but this Court held to the contrary stating,

"Here the state established that some marijuana was found in appellant's house, and a coffee can of it was found in a bush in his backyard. The evidence established one set of footprints in the snow near the bush, and the officers testified to seeing him go back to the trash can near the bush. A defendant need not have actual physical possession of marijuana to sustain a conviction for possession of it, but the state need only prove that he has such dominion and control over it as to establish constructive possession."[4]

The question of reasonable cause for the element of possession in this action is whether the observation of two marijuana plants would give rise to reasonable cause for the police to believe that the residents of the house were exercising dominion and control over the plants. Unlike the *Segovia* case, and the cases relied on in that case to define the doctrine of constructive possession, [5] there was no physical connection of any kind established between the marijuana plants in this action and any resident of the house. Clearly the facts fall far short of demonstrating any dominion or control by the residents of the house and thus do not give rise to reasonable cause to believe that Pontier had possession of the marijuana plants.

The other two elements of the offense of possession of marijuana are knowledge that the substance is marijuana and intent to possess it. The statutory definition of the offense does not specifically require knowledge and intent, but I.C. § 18–114 provides, "In every crime or public offense there must exist a union, or joint operation, of act and intent, or criminal negli-

---

1. State v. Segovia, 93 Idaho 594, 468 P.2d 660 (1970); State v. Loyd, 92 Idaho 20, 23, 435 P.2d 797 (1967).

2. In effect at the time of the arrest.

3. State v. Segovia, *supra,* note 1.

4. State v. Segovia, *supra,* note 1, 93 Idaho at 598, 468 P.2d at 664.

5. State v. Segovia, *supra,* note 1, at 598, 468 P.2d 660; White v. United States, 315 F.2d 113 (9th Cir. 1963)—per curiam; United States v. Hernandez, 290 F.2d 86 (2nd Cir. 1961)—remanded to trial court for failure to explain possession in charge; People v. White, 50 Cal.2d 428, 325 P.2d 985 (1958)—possession by agent under explicit instruction of defendant; People v. Magdaleno, 158 Cal. App.2d 48, 322 P.2d 89 (1958)—narcotics found in room rented by defendant.

gence." The question of reasonable cause for the elements of knowledge and intent is whether observation of the two plants would give rise to reasonable cause for the police to believe that Pontier had knowledge of the presence of marijuana plants on his rented property and that he intended to possess them. Without some showing of a connection between the plants and Pontier other than their presence on his property, it cannot be concluded that he had knowledge of them and intended to possess them.

In comparing the facts of this case to other decisions of this Court involving reasonable cause for arrest, it is clear that much less was shown in this case to connect Pontier with a criminal offense than was shown in the others. In State v. Segovia, the defendant also challenged the probable cause that led to his arrest. This Court recited the facts giving rise to reasonable cause as,

"In the present case the officers observed much of the initial transaction between their informer and appellant, and although they did not see the actual transfer of marijuana from appellant to the informer, they had the statement of the informer, whom they knew from past occasions to be reliable, that he had purchased the marijuana from appellant. This marijuana was delivered to the officers shortly after its purchase, and the can was in a brown paper sack similar to the one the officers had observed appellant carrying during their surveillance." [6]

In this case there was never any physical connection between Pontier and the marijuana plants either observed or reported by a reliable informer.

In State v. Loyd, [7] the appellant in a burglary conviction claimed that there was no probable cause for his arrest, but this Court held to the contrary and recited the following facts,

"[T]he police officers observed a car with out-of-state license plates driving slowly during the early morning, in the vicinity where a burglary had occurred minutes before. The area was predominately residential. One officer noticed an occupant throw something in a furtive manner from the car." [8]

In this case there were no suspicious activities that would connect Pontier and the marijuana plants.

A search for analogous factual situations in other jurisdictions in which probable cause for an arrest is based solely on the observation of contraband in the vicinity of the suspect resulted in the discovery of very few cases which indicates that more information is usually required before probable cause is determined to exist. In the case of People v. Olson [9] the police arrested Olson's girlfriend and two others in the car for possession of marijuana and found marijuana in the car. The police then arrested Olson at his residence for possession of marijuana. The Colorado Supreme Court held that the police did not have probable cause to arrest Olson and stated,

"The only circumstance to tie Olson to the unlawful conduct of the three occupants of Olson's car was his ownership of the vehicle. He was not a participant in the alleged unlawful conduct which gave rise to the initial arrests, which in turn justified the search of the vehicle. None of the three occupants gave any statements implicating Olson * * *. The officers must have had not only probable cause to believe an offense had been committed, but also that the person to be arrested had committed it." [10]

6. State v. Segovia, *supra*, note 1, 93 Idaho at 597, 468 P.2d at 663.

7. State v. Loyd, *supra*, note 1.

8. State v. Loyd, *supra*, note 1, 92 Idaho at 23, 435 P.2d at 800.

9. 175 Colo. 140, 485 P.2d 891 (1971).

10. People v. Olson, *supra*, note 9, 485 P.2d at 894.

Similarly in this action, the only circumstance to tie Pontier to the marijuana plants was their presence on his rented property. The police had reason to believe that the narcotic laws were being violated upon observation of the plants, but they had no indication as to who was exercising dominion and control over the plants. Another similar factual situation is found in the case of United States v. Myers.[11] In that case the appellant Myers was arrested while sitting in the woods when a package of marijuana was found a few feet from him. On appeal it was held there was no probable cause to believe that Myers was in possession of the marijuana. Although the marijuana plants in this action were located on Pontier's rental property, there are no factual circumstances to demonstrate his possession or control of marijuana similar to the Myers case.

By measuring the information the police possessed against the elements of the offense, it can only be concluded that there was no reasonable cause to believe Pontier was in violation of I.C. § 37–3202 and thus there was no reasonable cause to justify his arrest and the accompanying search of his house. The majority's position of upholding the arrest and search appears to lessen the standard of reasonable cause that has been applied in the past by this Court and other courts to the detriment of the public's right to be free from unreasonable governmental interference. By holding that there was no reasonable cause to arrest Pontier does not mean that the police are powerless to act when they observe marijuana or any other type of contraband located on a person's property. Upon observation of the contraband, the police have the right to seize it and investigate to determine if the owner or tenant has any connection with the contraband, but they have no authority to arrest without further evidence the occupier of the property and other persons found thereon.

The policy behind the reasonable cause requirement for a warrantless arrest grows out of the Fourth Amendment's limitation on governmental action:

> "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."[12]

Without a warrant an arrest without reasonable or probable cause is an unreasonable seizure of a person and thus violative of the Fourth Amendment. The purpose of the Fourth Amendment is to protect the citizen's right to be free from unreasonable governmental interference and his right to be unmolested.

An arrest is governmental interference with an individual's freedom. Although a conviction may never be obtained, an arrest has serious effects on a person's employment, social life, and general well being.[13] In this action in addition to the arrest, the police invaded and searched Pontier's home. In order to minimize the above adverse consequences of an arrest, the Fourth Amendment requires that the police possess reasonable or probable cause to believe that the suspect has committed a crime before a warrant can issue and the arrest take place. The probable cause requirement is a limitation on governmental action for the protection of the American people and can only be modified by the electorate, not by this Court. The majority has abdicated this Court's duty to protect the public's constitutional guarantees from governmental encroachment.

It is unfortunate that Pontier's conviction should be reversed because during the search of the house to arrest Pontier, evidence was discovered that indicated he was

---

11. 20 U.S.C.M.A. 269, 43 C.M.R. 109 (1971).

12. United States Const., amend. IV. See Idaho Const., art. I, § 17.

13. Leedom, Removing the Stigma of Arrest: The Courts, The Legislatures and Unconvicted Arrestees, 47 Wash.L.Rev. 659 (1972).

involved in narcotics. This Court, however, must look beyond the effect of its ruling in this one case, and must consider the effect of its ruling on the public generally in connection with the Fourth Amendment's guarantee against unreasonable governmental interference. Today's majority decision will allow the police to arrest persons and conduct searches of their homes any time contraband of any type is observed on the property they occupy. If a thief fleeing from a crime discards stolen property on any portion of a person's property, then under the majority's reasoning upon police observation of the contraband the land occupier and his family would be subject to arrest and their home searched. Surely the Fourth Amendment never contemplated such a result.

Because probable cause was not established in this case, we need not reach the issue of whether arrest warrants are required by the Fourth Amendment when there are no exigent circumstances.[14] Although not ruling on the Fourth Amendment's warrant requirements for an arrest, it should be pointed out that:

"An arrest without a warrant bypasses the safeguards provided by an objective predetermination of probable cause, and substitutes instead the far less reliable procedure of an after-the-event justification for the arrest or search, too likely to be subtly influenced by the familiar shortcomings of hindsight judgment."[15]

This action is a perfect example of the efficacy of the warrant procedure. Had the police gone to a magistrate to obtain an arrest warrant, the lack of probable cause would have been discovered. Through more investigation a good case could have been built against Pontier and this appeal with its accompanying cost to the taxpayer could have been avoided. Additionally, the majority would not be forced to diminish constitutional standards that are for the protection of the public in order to affirm a conviction.

Because of the adverse consequences of the majority's decision upon the public's right of privacy and freedom from governmental interference, Pontier's conviction must be reversed.

14. *See* The Neglected Fourth Amendment Problem in Arrest Entries, 23 Stan.L.Rev. 995 (1971).

15. Beck v. State of Ohio, 379 U.S. 89, 96, 85 S.Ct. 223, 228, 13 L.Ed.2d 142 (1964).